STATE OF IOWA, appellee, v. RAYMOND LOUIS POST, appellant.

No. 50824.

(Reported in 123 N.W.2d 11)

JULY 16, 1963.

REHEARING DENIED SEPTEMBER 17, 1963.

Joseph Z. Marks, of Des Moines, for appellant.

Evan A. Hultman, Attorney General, John H. Allen, Assistant Attorney General, Martin D. Leir, County Attorney, and Edward N. Wehr, Assistant County Attorney, for appellee.

LARSON, J.—On April 30, 1962, the defendant, Raymond Louis Post, was charged with the crime of robbery with aggravation in violation of section 711.2, Code of Iowa, 1962, and with being a habitual criminal in violation of section 747.5, Code of Iowa, 1962, was tried and convicted by jury on May 24, 1962, and on June 4, 1962, judgment was entered and he was sentenced to imprisonment at the State Penitentiary for a term not to exceed twenty-five years. His appeal to us was perfected on June 25, 1962.

It is contended the court erred in permitting certain clothing and evidence connected therewith to be considered by the jury, that it erred in failing to properly instruct with regard to circumstantial evidence, and that it erred in submitting an instruction regarding the defense of alibi. We find no reversible error.

The State's evidence showed that on the 23d of February, 1962, at approximately 2:30 p.m., a man armed with a revolver walked into Bert's Tavern at 1238 West Fourth Street in Davenport, Iowa, ordered a patron to bolt the door to an adjoining restaurant, and informed everyone at the bar that it was a

holdup. This man, who looked to be about 37 years of age, wore a blue cap with ear flaps, dark glasses, a blue denim jacket, appeared to be about 5' 7" tall, and weighed about 165 pounds. He ordered all the patrons to face the wall with their hands behind them, went to the center of the bar and forced the proprietor, Alberta Larsen, to aid him in placing the cash register money and the check cashing money from another box into a paper sack. Approximately $1500 in all was taken by the bandit. After ordering everyone, except the owner, to lie on the floor, he left by the back entrance.

Police were called about 2:35 p.m. and, as their patrol car neared the tavern, they found a shirt and jacket in the street. In the pocket of the jacket was a pair of dark sunglasses and a plain white book of matches. These items were taken to the tavern, where they were identified by the patrons as those worn by the bandit. Their description of the gunman was put over the air, together with a communication from the desk sergeant that Raymond Louis Post, the defendant, was the man wanted. At approximately 3:40 p.m. two policemen observed defendant leaving another west-end tavern with two other men, and he and his companions were followed, arrested, and taken to the police headquarters. Within the hour the defendant was placed in a lineup with four other men of approximately the same height and weight, and each was required to read phrases made up of words used by the bandit in the tavern robbery. In that and two later lineups, the defendant and four other men were viewed by the tavern owner and the patrons individually. In the first one, viewed by the owner and six patrons, the defendant was allowed to wear his own clothing. When all of them identified the appellant as to stature and voice, and *one positively identified him as the robber*, he was booked. On request, he voluntarily surrendered his clothing and other personal belongings, including a plain white book of matches, and was provided a white coverall suit which he wore at the successive lineups. Other patrons identified him thereafter as to stature and voice with "no dissimilarities".

Appellant was charged with the crime of robbery with aggravation and by telephone obtained an Illinois counsel, who

appeared with him when he was taken before a magistrate the morning following the robbery. The magistrate advised them of the charge against defendant and also advised the accused of his constitutional rights. A formal hearing was set for February 28, 1962, and held on that date.

Defendant denied he voluntarily surrendered his clothing and personal effects or agreed to the taking of samples of his hair, and denied he held up Bert's Tavern as charged. He testified he was at that time a patron in Debbie's Tap, a considerable distance from the scene of the crime.

Defendant's clothing and a book of matches, together with the items found on the street near the scene of the crime, were sent to the laboratories of the Federal Bureau of Investigation in Washington, D. C., where tests were conducted thereon.

On the trial F. B. I. agents testified that identical fabric fibers and like dyed rabbit hairs were found on the clothing taken from appellant and on the item of clothing found near the scene of the crime, that matching paint particles such as used on juke boxes and other such fixtures were found on the clothing worn by the defendant and the clothing identified as articles worn by the bandit. They testified the matchbook found in the robber's clothing and the book found in defendant's pocket were stapled on the same machine, and both were manufactured by the same party.

I. A person duly accused of a crime is rightfully entitled to one, but only one, fair trial. Failure of defendant to reasonably exercise his procedural rights in his trial necessarily limits the grounds the appellate court will consider in a claim that he failed to receive a fair trial. Section 780.4, Code of Iowa, 1962.

When the defendant, for whatever reason, fails to preserve his alleged errors in proceedings before the district court, it must sufficiently appear from the whole record that he failed to receive a fair trial, had incompetent counsel, or that in the interest of justice he should be granted a new trial. The burden to so show is upon him. His present counsel, the third in this matter, admits, as he must, that errors relating to the instructions of which he now complains were not at anytime called to

the attention of the trial court, and that the grounds for the rejection of certain evidence urged below are not those urged here. No exceptions to the instructions were taken at the time of the trial. No complaint as to them appears in his motion for a new trial.

Counsel does not deny that in matters of procedure he is and should be bound by the discretions and judgment exercised by his predecessors in the former trial. However, he now asks us to review the whole record, to consider the errors assigned, timely or not, and grant defendant a new trial in the interest of fairness to the accused. We are well aware of the provisions of section 793.18 of the Code, and in such cases as this we generally do examine the whole record without regard to technical errors or defects which do not affect the substantial rights of the parties. After a careful examination of the submitted transcript, as well as the record, we are not convinced they disclose any substantial or reversible error.

The extent of our duty in this regard and the meaning of section 793.18 we fully discussed in the recent cases of State v. Kramer, 252 Iowa 916, 918, 109 N.W.2d 18, and State v. Pullen, 252 Iowa 1324, 1327, 110 N.W.2d 328, where we were also asked to consider errors assigned "in the interest of fairness to the accused." Although mindful of the provisions of section 780.4, Code of Iowa 1962, which provides that the provisions relating to the manner of trial of civil actions also applies to the trial of criminal actions (State v. Miller, 254 Iowa 545, 558, 117 N.W.2d 447, 456), it is true we have stated that if upon an examination of the record under section 793.18 we are convinced it shows that a fair trial was not had, we will not hesitate to reverse. State v. Cusick, 248 Iowa 1168, 1170, 84 N.W.2d 554, 555; State v. Martin, 243 Iowa 1323, 1327, 55 N.W.2d 258, 260, 34 A. L. R.2d 904. That is a good and sound rule, but it does not mean every departure from a perfectly tried case will justify such appellate action.

It must be noted that those cases we have reversed on such a plea were extreme cases, and the records therein clearly and amply showed a failure to receive a fair trial.

In State v. Kramer, supra, 252 Iowa 916, 919, 109 N.W.2d

18, we succinctly said that "orderly processes of court procedure, as established by many years of trial and error or by legislative enactment, must be substantially observed or the rights of the contesting parties may be lost in a welter of confusion." There we carefully pointed out that when firmly fixed right to the services of counsel is exercised, it will not do to say that the accused is immune from compliance with the rules by which established procedure requires trials be conducted.

Under such circumstances we made it clear that the trial court and the State are entitled to know what the defendant claims, to what he objects; in short, in what respects he contends he is not receiving a fair trial. If, being represented by counsel not incompetent, he fails to make his position clear, so that the trial court may know his complaints and take care to remedy those which may be well-founded, he will likely not be in a strong position to urge error in the appellate court.

Defendant, as it appears in this record, had often had the need for counsel in criminal actions, and when dissatisfied with their endeavors had not hesitated to change them. He can gain no advantage in this manner, for the mere fact that counsel's endeavor does not bring the result hoped for does not indicate incompetency or lack of diligence, but may indicate his well-laid trial plan or strategy did not work out. This is not a showing sufficient to entitle the accused to a new trial with new counsel, or to justify our conclusion that in the interest of justice the accused should be granted a new trial. Each case, of course, needs to be considered upon its own facts and circumstances as disclosed by the record or the transcript submitted. Having done that here, we conclude defendant's showing is insufficient to sustain his contention that he failed to receive a fair trial and that he should in the interest of justice be granted a new trial.

II. It was defendant's contention in the district court trial that his motion for a bill of particulars and to suppress testimony of certain witnesses was erroneously overruled, and that certain evidence pertaining to the matches and glasses as well as other exhibits was wrongfully admitted because of a defect in the showing of a continuous possession. These alleged errors set

out in his motion for a new trial, and referred to in his motion for a directed verdict, both of which were overruled by the court, are not the present grounds relied upon for reversal, with the possible exception of his first assignment, which contends: "The Court erred in permitting the clothing and evidence in connection therewith to be considered by the jury."

We will consider that assignment later, but as to the laxity in custodial or laboratory procedure of the police and the government, there was no evidence offered by the defense which even suggested that their handling was so improper that the exhibits should be regarded as in anyway untrustworthy. The showing that the exhibits were kept separate and in cellophane bags was not refuted. The trial court correctly rejected that contention. In addition, this alleged error was not advanced or argued in this appeal and must be deemed waived. Thus, we will confine our attention to the claim of prejudice to the assignments of error before us. The first assignment related to the admissibility of the clothing, matches and hair, taken from defendant, the clothing and other articles identified as those of the bandit, and the results of the F. B. I. tests offered and received as exhibits in the trial.

III.   Illegally-seized evidence, of course, is inadmissible, and if the evidence here obtained had been illegally taken or obtained by illegal search or seizure under the well-known case of Mapp v. Ohio, 367 U. S. 643, 81 S. Ct. 1684, 6 L. Ed.2d 1081, its admission would have been reversible error.

As we understand it, appellant now contends the evidence relating to personal property and samples of hair taken from him was illegally obtained. He now claims these items were taken before he was legally arrested and charged with a public offense. He relies on Mapp v. Ohio, supra, as establishing that taking of articles from the defendant without warrant while held without charge is in violation of the 4th and 14th Amendments to the Constitution of the United States and such evidence cannot be considered. The State contends this rule is not applicable here for two reasons. It is pointed out that the officers testified defendant voluntarily gave them his clothing and personal effects. He himself testified Officer Iverson asked for his

clothing and he said "okay" and started taking them off. While he claimed the officers took hair samples by trick, the officers testified they asked for a sample and he said he did not have to give it to them but to "go ahead". Obviously, a factual issue as to whether the defendant voluntarily surrendered his personal effects and a hair sample upon request was generated.

We cannot hold as a matter of law this evidence was obtained by an unlawful search. One can freely consent to a search of his person and, having done so, any search or taking of evidence pursuant to his consent is not unlawful and his constitutional rights are not violated. The evidence here we think amply justified a conclusion that the defendant had voluntarily consented to the search. People v. Faulkner, 166 Cal. App.2d 446, 333 P.2d 251, 252, and citations; Crawford v. United States, 219 F.2d 207, rehearing denied 220 F.2d 352.

Appellant's contention that he was illegally restrained when this personal property was taken also is not sustained by the record. Clearly, the evidence of probable cause for defendant's arrest when he was taken into custody is ample. That being the case, a search and seizure made incident thereto are likewise valid. Draper v. United States, 358 U. S. 307, 79 S. Ct. 329, 3 L. Ed.2d 327; Robinson v. United States, 364 U. S. 919, 81 S. Ct. 282, 5 L. Ed.2d 259; Bell v. United States, 358 U. S. 885, 79 S. Ct. 126, 3 L. Ed.2d 113; State v. Lyon, 176 Iowa 171, 157 N.W. 742.

It is well settled in this state that a peace officer may arrest without a warrant when he has reasonable grounds for belief that a felony has been committed and that the person before him committed it. Draper v. United States and Bell v. United States, both supra; section 755.4, Code of Iowa, 1962.

The police when called to the scene of this crime were duly informed of the offense, were given a description of the robber, and were advised the defendant was sought in connection with the crime. He was apprehended a little over an hour later in that vicinity, taken to the police station, placed in a lineup, identified, and booked. Sufficient probable cause to believe defendant was guilty of the robbery appeared, and he was validly arrested therefor. Weeks v. United States, 232 U. S. 383, 392,

34 S. Ct. 341, 58 L. Ed. 652, L. R. A. 1915B 834, Ann. Cas. 1915C 1177; Shettel v. United States, 72 App. D. C. 250, 113 F.2d 34. As a result, the subsequent further search of his person and the taking of his clothing and other personal effects for evidence was proper. Bell v. United States, 102 U. S. App. D. C. 383, 254 F.2d 82, certiorari denied 1958, 358 U. S. 885, 79 S. Ct. 126, 3 L. Ed.2d 113.

We are also satisfied the results of the tests applied to defendant's clothing and other property were admissible and the procedure proper. Robinson v. United States, supra. While the F. B. I. experts could not say the hair clippings found on the bandit's jacket were defendant's, they testified that this hair was not dissimilar thereto and that the hairs on the bandit's jacket were from a person of defendant's race and hair qualities. They testified the particles of paint, wood, and of dyed rabbit hair found on both defendant's garments and the jacket worn by the bandit were identical. In this regard this case is very similar to the case of Robinson v. United States, supra, where the appellants complained that their clothing was removed at police headquarters shortly after their arrest on suspicion of larceny, and that clothing was subjected to tests at the F. B. I. laboratories. The tests revealed paint chips and other debris corresponding to like material found at the scene of the burglary. In holding such evidence admissible, the court said: "We think that this procedure was proper, since probable cause to believe appellants guilty of housebreaking and larceny had already appeared, and appellants were validly under arrest therefor." Also see Richardson v. State, 97 Okla. Cr. 370, 264 P.2d 371, 374; and Scaffido v. State, 215 Wis. 389, 254 N.W. 651, 652. Since this evidence was legally obtained and properly submitted to the jury, we find in this assignment no injustice or unfairness which would justify granting appellant a new trial.

IV. Defendant next contends the court prejudiced him in failing to instruct with regard to circumstantial evidence, and particularly in its failure to instruct that the facts relied on must be of such a nature and be so related to each other that the only conclusion that can be fairly and reasonably drawn from them would be the guilt of the defendant. He cites State v.

Hooper, 222 Iowa 481, 485, 269 N.W. 431, 433, and State v. Boyle, 230 Iowa 305, 308, 297 N.W. 312, as establishing the rule that "The facts established must exclude every rational hypothesis except the ultimate fact sought to be established, to wit, that the defendant is guilty of the offense charged."

In Instruction No. 6 the trial court told the jury: "The facts essential to establish guilt of the defendant, or any such facts, may be shown by evidence either direct or circumstantial. Direct evidence is the evidence of witnesses to a fact or issue of which they have knowledge by means of their senses. Circumstantial evidence is that which tends to establish a fact or facts, from which it may be reasonably and logically deduced that the main or ultimate fact exists which is thus sought to be proved. In order, however, to warrant a conviction on circumstantial evidence *alone*, the facts proved must not only be consistent with the guilt of the accused, but they must also be inconsistent with any rational theory of his innocence." (Emphasis supplied.)

The instruction does not satisfy the defendant and was not, of course, intended as a complete instruction on circumstantial evidence. He did not complain of its insufficiency in the trial below or in his motion for a new trial. We have often held that failure to instruct as to circumstantial evidence is not reversible error where the evidence is not wholly circumstantial, and especially where no such instruction was requested. Therefore, in the state of this record we are not required to review the assignment. State v. Miller, 254 Iowa 545, 557, 117 N.W.2d 447, 455; State v. Shearer, 206 Iowa 397, 220 N.W. 13; State v. Mart, 237 Iowa 181, 186, 20 N.W.2d 63; State v. Bullis, 196 Iowa 480, 192 N.W. 793; State v. Albertson, 237 Iowa 1148, 1153, 24 N.W.2d 395; State v. Mitchell, 139 Iowa 455, 116 N.W. 808; State v. Walters, 244 Iowa 1253, 1261, 58 N.W.2d 4.

As a matter of grace we have reviewed the instructions in their entirety. They fairly presented the case to the jury and, if more explicit instructions were desired, they should have been requested by the defendant. We conclude under this record none was desired and any further instruction on this issue was waived. State v. Johnson, 252 Iowa 1321, 1323, 109 N.W.2d 625; State v. Sampson, 248 Iowa 458, 79 N.W.2d 210.

Furthermore, the defendant was positively identified as the bandit by a patron, Robert Thompson, and partially identified by every patron who saw him in the lineup. The verdict, therefore, did not necessarily rest upon the weight to be given the circumstantial evidence therein. State v. Warren, 242 Iowa 1176, 1185, 47 N.W.2d 221. We fail to find any such showing under this assignment of error of unfairness to defendant as would require the granting of a new trial.

V. In his final assignment defendant contends the court erred in submitting Instruction No. 13 regarding the defense of alibi. He contends under this record no defense of alibi was raised and that the giving of an instruction thereon was prejudicial to him. He also contends the instruction was erroneous in that it placed the burden of establishing that defendant was somewhere else by a preponderance or greater weight of the evidence, which had the effect of depriving him of the benefit of the presumption of innocence and relieved the State of the burden of proving the offense charged beyond all reasonable doubt. This latter proposition we rejected in a split decision in the recent case of State v. Stump, 254 Iowa 1181, 119 N.W.2d 210, and at this time it must be concluded that such an instruction is not a violation of the due process of law under the 14th Amendment to the Constitution of the United States, and that it is not an improper instruction as such.

As to the propriety of giving such an instruction in this case, we have more doubt. Although the defendant did testify that he was not present at the time and place the holdup was committed, and stated that he was in a tavern some four blocks away at the time, we are not prepared to say that when the defendant testifies in his own defense and claims he was some other place at the time of the crime, an instruction on alibi is required or is proper. The burden of establishing defendant's guilt of the offense charged, of course, does not shift, and we made that clear in the Stump case.

It is well established in this State that in the absence of the alibi notice required by section 777.18, Code of Iowa, 1962, the defendant may take the stand and claim he was far from the scene of the crime, and only the credibility of his testimony is

left to the jury, with the burden to prove he was at the scene of the crime still resting on the State. State v. Stump, supra. We also pointed out in the Stump case that it is only when defendant elects to go further and call witnesses to support his alibi contention that he assumes a burden, i.e., to establish his affirmative allegation or defense.

Here no such witnesses were called and no notice given. We are inclined to feel the instruction should not have been given.

Nevertheless, we are not convinced under these circumstances it was reversible error. There had been no objection to that instruction either at the time it was proposed or in defendant's motion for a new trial. The record discloses the proposed instructions were submitted to both counsel before given, and no objections to them were made. Defendant reserved any exceptions to the instructions, but did not see fit to make any such exceptions after they were given nor later in his motion for a new trial. While it is true the defendant was not required to except before the instructions were given, nor to approve them or consent to the instructions as written (section 787.3(7), Code, 1962), yet when he did not urge any such exceptions in his motion for a new trial, there arises a strong implication that he was satisfied with them and waived his right to except to them. This, of course, was a right that could be waived. State v. Hartung, 239 Iowa 414, 424, 30 N.W.2d 491; State v. Holder, 237 Iowa 72, 83, 84, 20 N.W.2d 909; 23A C. J. S., Criminal Law, section 1341.

Having found no reversible error, the judgment of the trial court must be affirmed.—Affirmed.

All JUSTICES concur.