STATE of Iowa, Appellee,

v.

Kenneth HALVERSON, Appellant.

No. 52623.

Supreme Court of Iowa.

Dec. 12, 1967.

Sheridan & Sheridan, Waukon, for appellant.

Richard C. Turner, Atty. Gen., James C. Sell, Asst. Atty. Gen., and John W. Shafer, County Atty., for appellee.

MOORE, Justice.

Defendant, Kenneth Halverson, was charged, tried and convicted of the crime of hunting by artificial light in violation of Code section 109.93 and ordered to pay a $300 fine. He has appealed. We affirm.

Gerald Ira Hoilien, a state conservation officer, testified that while on duty the night of December 5, 1965 he observed lights flashing in a field east from his location at the Helen Hirth farm and called Iowa Highway Patrol Officer Gary Soper for assistance. After both officers observed the lights they separated. Hoilien took a closer position where, by the use of United States Navy binoculars, he observed for about five or ten minutes an automobile being driven in slow circles with its lights on in a cornfield north of Jim Scholtes' farm house. From the style and particularly the tail lights he determined the automobile was a 1958 Chevrolet.

When the car appeared to head in the direction of the Scholtes' farm buildings, Hoilien drove to the Scholtes' farmstead where he observed the car coming from the field into the area of the buildings. He then stopped his car blocking the driveway and turned on his headlights and red light. The other car, a 1958 Chevrolet owned and driven by defendant, stopped about ten feet from the officer's vehicle. The officer observed cornstalks sticking out from the radiator and from underneath the car.

The testimony regarding the events which followed is in dispute. Hoilien testified, both at the hearing of defendant's motion to suppress certain evidence and at the trial, that when he approached defendant's automobile he identified himself and asked defendant, who was then outside his car, whether he had been hunting and defendant replied "Yes, a little."

Officer Hoilien further testified he then asked defendant if he could open the door of defendant's automobile and he said "Yes". The officer then removed a gun that was lying on the rear floor board. Defendant was then asked if any other guns were in the car to which he answered "No". Hoilien then asked defendant if he minded if he looked and defendant stated "No, go ahead". The officer then found a rifle protruding from under the front seat with

three shells in the magazine which he removed. They were expanding shells which when fired expand and make a large hole when hitting an animal.

Hoilien testified: "After I looked in the car I asked Kenneth Halverson to step over to my car, and he did. I asked him if he was aware of this shining law or hunting with an artificial light, and he said 'No'. I asked him if that was the first time he had gone hunting, and he replied it was the first time he had gone deer hunting and he wasn't going to go any more. Those were his words. I believe I asked him if he got talked into going hunting, and he said, 'No, it's just as much my fault as it is anybody's.' I asked him if they had killed a deer, and he said they hadn't killed a deer that night or any other night."

Hoilien further testified he asked defendant how long they had been out in the fields and defendant shrugged his shoulders and said, "I don't know. Probably about 45 minutes or so."

After being retained approximately 45 minutes defendant and the occupants of his automobile were released by the officer to permit defendant to take his wife and son home. They had been visiting in the Scholtes' home. As instructed defendant and the other men in his car when it was stopped by Hoilien met the officers at the Waukon City Hall where formal charges were filed against them.

Defendant and the occupants of his car, except one who had died before trial time, testified they had been pheasant hunting during the day of December 5, after eating, cleaning game and delivering some toys to another farm they then drove to the Scholtes' farm to leave defendant's minor son with his mother who was there visiting and they were just leaving when stopped by the officer. Each denied they had been in the Scholtes' farm field and that they had been hunting that night. They stated the guns had been left in the car after pheasant hunting that day.

They testified when stopped by Hoilien he rushed to the car, jerked open the doors, and seized the two guns.

Prior to trial defendant moved to suppress evidence of the seizure of the two guns and asked the court to direct the State not to offer or attempt to offer any proof of defendant having possession thereof. On hearing of this motion Hoilien, defendant and occupants of his car, except the one who had died, testified regarding seizure of the guns. We have set out above the substance of their testimony.

The trial court overruled defendant's motion to suppress this evidence. No reasons were then stated.

At the close of the State's case in chief defendant again raised the question of the admissibility in evidence of the two guns, exhibits A and B. The trial court's ruling includes: "I feel, on the basis of the record as it stands, the defendant consented to have the search of his car by Officer Hoilien; and that in the absence of a search warrant that the evidence was legally obtained."

I. Defendant argues the trial court erred in overruling his motion to suppress and allowing evidence on trial regarding seizure of the two guns. We do not agree.

█ Illegally seized evidence, of course, is inadmissible, and if the guns were illegally taken or obtained by illegal search or seizure under the well-known case of Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L. Ed.2d 1081, 84 A.L.R.2d 933, admission of evidence thereof would be reversible error. State v. Post, 255 Iowa 573, 581, 123 N.W. 2d 11, 16; State v. Hall, 259 Iowa 147, 143 N.W.2d 318, 320; State v. Anderson, 260 Iowa 122, 148 N.W.2d 414, 416.

█ It is undisputed no search warrant had been obtained by Officer Hoilien. Based on this fact defendant argues his constitutional protection against unreasonable search and seizure as guaranteed by the Fourth Amendment to the Constitution of the United States and also Article 1, section

8 of the Constitution of the State of Iowa was violated. Not all searches or seizures undertaken without a warrant, however, are unreasonable. A search and seizure predicated on voluntary consent or one conducted as an incident of a lawful arrest are exceptions to the rule that a search must rest upon a search warrant. Preston v. United States, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed. 2d 777; Stoner v. State of California, 376 U.S. 483, 84 S.Ct. 889, 11 L.Ed.2d 856; State v. Post, 255 Iowa 573, 582, 123 N.W. 2d 11, 16, 17; State v. Raymond, 258 Iowa 1139, 1344, 142 N.W.2d 444, 447; State v. Anderson, 260 Iowa 122, 148 N.W.2d 414, 416; State v. Gates, Iowa, 150 N.W.2d 617, 618; State v. Brant, Iowa, 150 N.W.2d 621, 624.

Defendant admits a lawful arrest was made by Officer Hoilien. Code section 755.4 provides a peace officer may make an arrest without a warrant for a public offense committed in his presence or where a public offense has in fact been committed and he has reasonable ground for believing that the person to be arrested has committed it.

In our recent case of State v. Anderson, supra, we review our holdings and those from other jurisdictions regarding an officer's right to conduct a search of an automobile incident to a lawful arrest and need not repeat here the applicable principles of law. We hold the search and seizure of the two guns was incident to defendant's lawful arrest.

The trial court's finding defendant had consented to the search of his automobile is amply supported by the record. The principles of law applicable thereto are analyzed in State v. Gates, supra, 150 N.W. 2d 617, filed May 2, 1967. To repeat them here would unduly lengthen this opinion.

II. Based upon rules laid down in Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, 10 A.L.R.3d 974, defendant asserts his constitutional right against self-incrimination was violated by admission of Officer Hoilien's testimony

regarding claimed statements made by defendant. No claim is made by the State that any warning of constitutional rights was given by the officer. Miranda, however, does not apply here because the trial preceded the Miranda decision. Johnson v. State of New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882; State v. Rye, 260 Iowa 146, 148 N.W.2d 632, 638, 639.

Assuming, arguendo, defendant had a valid objection to the testimony regarding claimed admissions by defendant, we find no objection to Hoilien's testimony in regard thereto was made during the entire trial of the case. Defendant's experienced and able counsel had heard substantially the same testimony at the hearing on the motion to suppress. No motion to strike said testimony was made in the trial court. We have repeatedly said under such circumstances no appealable question is presented to this court. State v. Post, 255 Iowa 573, 580, 123 N.W.2d 11, 15; State v. Ford, 259 Iowa 744, 145 N.W.2d 638, 642; State v. Olson, Iowa, 149 N.W.2d 132, 136. Failure to object to the admissibility of evidence in the trial court waives any error therein and its admissibility is not reviewable here. State v. Jones, 253 Iowa 829, 834, 113 N.W.2d 303, 306, and citations. Ordinarily constitutional questions cannot be raised for the first time on appeal. State v. Jones, supra; State v. LaMar, Iowa, 151 N.W.2d 496, 502, 503; State v. Wallace, Iowa, 152 N.W.2d 266, 268; State v. Hardesty, Iowa, 153 N.W.2d 464, 469.

Therefore, defendant's assignment of violation of his constitutional right against self-incrimination cannot be considered here.

III. Defendant's next assigned error is based on receipt of testimony of Officer Hoilien as to his observations of the Scholtes' farm field the morning after defendant's arrest.

Hoilien testified he returned to the Scholtes' farm the next morning and after

getting permission drove in the approximate path he had observed defendant's car coming from the field. He there found fresh automobile tire tracks over the contours in the area where he observed the 1958 Chevrolet the night before. He identified a map, exhibit E, which he had prepared and stated it fairly and accurately portrayed the course of the tire marks which he had observed in the field. Defendant's objection to this testimony as incompetent, irrelevant, immaterial and without foundation was overruled. Later when exhibit E was offered defendant's objection to it was sustained.

 Hoilien's description of the location and path of these tire marks is consistent with his testimony of the automobile's course on the previous night. We are not persuaded receipt of this evidence was reversible error. See Davidson v. Cooney, 259 Iowa 1278, 147 N.W.2d 819, 823, 824, and citations.

IV. Code section 109.93 under which defendant was charged, tried, convicted and fined provides: "Hunting by artificial light. It shall be unlawful to throw or cast the rays of a spotlight, headlight or other artificial light on any highway, or in any field, woodland or forest for the purpose of spotting, locating or taking or attempting to take or hunt any animal, except raccoons or other fur-bearing animals when treed with the aid of dogs, while having in possession or control, either singly or as one of a group of persons, any firearm, bow or other implement whereby game could be killed.

"Any person violating this section shall be punished by a fine of not more than three hundred dollars or imprisonment in the county jail for a period not to exceed thirty days."

Code section 109.119 provides: "Penalties. Whoever shall violate any of the provisions of the foregoing sections numbered 109.38 to 109.118, inclusive, shall be punished as is provided in section 109.32."

The penalty provided in section 109.32 is a fine of not less than ten dollars or more than one hundred dollars or imprisonment in the county jail not more than thirty days.

Defendant points out the obvious conflict of penalty under section 109.93 and sections 109.119 and 109.32. He contends if he is to be punished at all it must be under the provisions of 109.32 and asserts because of the contradiction section 109.93 is unconstitutional and unenforceable. Defendant cites no authorities to support this argument. The trial court was correct in rejecting these contentions.

Sections 109.119 and 109.32 are general statutes providing penalty for violation of several sections of chapter 109. Section 109.93 is a special statute covering a specific offense and prescribing the penalty for violation thereof. This would appear particularly true since section 109.93 is the later enactment. State ex rel. Weede v. Iowa Southern Utilities Co., 231 Iowa 784, 830, 2 N.W.2d 372, 396, 4 N.W.2d 869; Iowa Mut. Tornado Ins. Ass'n v. Fischer, 245 Iowa 951, 954, 65 N.W.2d 162, 165; 82 C.J.S. Statutes § 369.

 It is a fundamental rule that where a general statute, if standing alone would include the same matter as a special statute and thus conflict with it, the special Act will be considered an exception to or qualification of the general statute and will prevail over it, whether it was passed before or after such general enactment. Yarn v. City of Des Moines, 243 Iowa 991, 998, 54 N.W.2d 439, 443; Iowa Mut. Tornado Ins. Ass'n v. Fischer, 245 Iowa 951, 955, 65 N.W.2d 162, 165; Liberty Consolidated School Dist. v. Schindler, 246 Iowa 1060, 1065, 70 N.W.2d 544, 547; Gade v. City of Waverly, 251 Iowa 473, 477, 101 N.W.2d 525, 527; Smith v. Newell, 254 Iowa 496, 501, 117 N.W.2d 883, 886; 50 Am.Jur., Statutes, section 564; 82 C.J.S. Statutes § 369. Therefore, sections 109.119 and 109.32, the general statutes, should not be interpreted as limiting the sentence provided by section 109.-93, the special statute.

V. There is no presumption against the constitutional validity of a statute. Every reasonable presumption must be called to support the act. A challenging party must overcome these presumptions and negative every reasonable basis which will sustain the statute. Graham v. Worthington, 259 Iowa 845, 146 N.W.2d 626, 631, and citations. Defendant's assertion of unconstitutionality against section 109.93 falls far short of the burden resting on him.

VI. In his motion for new trial defendant claimed one of the jurors failed to disclose the fact the county attorney had represented the juror's wife in a divorce action a short time before the trial of this case. The trial court found the juror had not made a false answer. The record supports this finding. Assuming, arguendo, the juror failed to make such a disclosure, we are unable to understand how defendant could thereby be prejudiced. In support of this conclusion see State v. Wilcoxen, 200 Iowa 1250, 206 N.W. 260.

VII. We have carefully considered defendant's many claimed grounds for reversal and find none are shown. Our review of the entire record leads us to conclude defendant was afforded a fair trial.

Affirmed.

All Justices concur.