**STATE of Iowa, Appellee,**

v.

**Hoover Lincoln COFFEE, Appellant.**

**No. 53686.**

Supreme Court of Iowa.

Dec. 15, 1970.

Stanley M. Nielsen and William F. Olinger, Cedar Rapids, for appellant.

Richard C. Turner, Atty. Gen., and Roxanne Barton Conlin, Asst. Atty. Gen., William G. Faches, County Atty., for appellee.

LeGRAND, Justice.

Defendant was charged by county attorney's information with fatally shooting Michael Earl Lawson in violation of section 690.1, The Code, 1966. Upon trial the jury found him guilty of second degree murder. He appeals from judgment on that verdict.

The appeal raised four issues: (1) error in the admission of two guns owned by defendant but totally unrelated to the crime; (2) error in the admission of certain statements of defendant's common-law wife allegedly relating to prior criminal conduct; (3) error in instructing the jury on the included offense of manslaughter; and (4) error in overruling defendant's motion for new trial upon a showing of bias and prejudice of one of the jurors. We affirm the trial court.

I. Early in the trial a Cedar Rapids police officer testified he gathered up certain evidence at the scene of the shooting, including a Mossburg shotgun, the weapon

used in the killing, and two other guns—a 22-caliber rifle and a 32-caliber pistol. These last two were admitted as exhibits over defense objections as to relevancy. In ruling, the trial court announced they were subject to being connected up.

On cross-examination the police officer gave his opinion that the rifle and the pistol had no connection with the crime. At that time defendant again unsuccessfully asked the exclusion of the exhibits.

At the conclusion of the State's case, the trial court upon its own motion withdrew the two exhibits with this announcement to the jury:

"* * * Exhibits 5 and 6 * * * being a 22 Marlin Rifle and a 32 revolver * * have not been connected up in this case. There has been no showing of any relevancy or materiality of these exhibits and * * * [they are] hereby excluded * * *. The jury is to give these two exhibits absolutely no consideration whatsoever in any of their deliberations. They are entirely excluded from evidence."

The real question before us, then, is whether the defendant was prejudiced by the time and manner of withdrawing these exhibits.

■ If evidence is improperly admitted but is later withdrawn with a cautionary statement to the jury to disregard it, there is no error except in extreme instances where the prejudicial effect would probably remain to influence the verdict despite its exclusion. State v. Caringello, 227 Iowa 305, 309, 288 N.W. 80, 82; State v. Gillam, 230 Iowa 1287, 1289, 1290, 300 N.W. 567, 568; State v. Miskell, 247 Iowa 678, 690, 73 N.W.2d 36, 42; State v. Olson, 249 Iowa 536, 554, 86 N.W.2d 214, 225; Castner v. Wright, 256 Iowa 638, 652, 127 N.W.2d 583, 591; 5 Am.Jur.2d, Appeal and Error, section 807, page 249.

■ Here the trial court withdrew the exhibits as soon as the State had rested and it had become apparent they were not to be connected up—the premise upon which they had been received in the first place. The trial court then also ordered the jury to disregard this evidence. The cautionary statement was both specific and clear; nor was the evidence such as would naturally create prejudice which such a statement could not remove.

We are satisfied there was no error here.

■ II. The next assignment of error deals with the testimony of Joan Harkless Coffee, defendant's common-law wife.

On cross-examination the State sought to show defendant had displayed a violent temper toward her on several occasions. While this evidence was probably more favorable than unfavorable to defendant, objection was made that it went beyond the scope of direct examination. No other ground for its exclusion was urged.

In submitting the case to the jury the trial court on its own motion directed the jury to disregard all this evidence as being "immaterial to this case."

For the first time defendant now urges he is entitled to a new trial because the evidence of his wife disclosed the commission by him of other crimes unrelated to the one for which he was on trial. He relies principally on State v. Brown, 253 Iowa 658, 113 N.W.2d 286 and State v. Gill, 259 Iowa 142, 143 N.W.2d 331.

These cases, and the authority they cite, announce the familiar rule that the State (with certain exceptions not applicable here) cannot prove against a defendant any crime except the one alleged in the indictment or information, either as a foundation for separate punishment or to suggest he is guilty of the one charged. However, that does not aid defendant here.

Mrs. Coffee testified her husband had once "shot a gun up in the air." Apparently this violated a city ordinance.

Defendant also insists the testimony shows he once assaulted his wife with a

gun. We can find no such evidence, although we have read the transcript carefully in search of it. What it shows is that Mrs. Coffee pointed a gun at her own head in order to scare defendant during a family quarrel.

This is the evidence of other crimes about which objection is made. If indeed it is error at all, we doubt if the admission of such evidence could be seriously argued as reversible error.

But we need not even consider that matter for defendant raises nothing for us to review. As already stated, the only objection at trial was that the cross-examination went beyond the scope of direct examination. That objection has been entirely abandoned now. We find no mention of it in the brief nor was it argued orally. Instead defendant asks relief because the evidence improperly proved the commission of other crimes. This was not asserted in the trial court nor even in the motion for new trial. It is first advanced now.

We have held many times an objection to the introduction of evidence cannot be first made on appeal. The trial court has the right to know the basis for an objection so that any defect may, if possible, be remedied and the trial saved. Having failed to raise the issue before, defendant may not take advantage of it now. 4 C.J. S. Appeal and Error § 248, page 767; Ferris v. Riley, 251 Iowa 400, 408, 101 N.W.2d 176, 181; State v. Hodge, 252 Iowa 449, 462, 105 N.W.2d 613, 620; State v. Thompson, 254 Iowa 331, 338, 117 N.W.2d 514, 518; Englund v. Younker Bros., Inc., 259 Iowa 48, 54, 142 N.W.2d 530, 533; Linge v. Iowa State Highway Commission, 260 Iowa 1226, 1232, 150 N.W.2d 642, 646.

We have probably given more attention to this assignment than the circumstances justify. There is no merit to defendant's complaint.

 III. Defendant next says the trial court's instruction on manslaughter was wrong because it failed to include a statement that if committed in the heat of passion induced by adequate provocation, the killing would be manslaughter.

After defining manslaughter as the unlawful and felonious killing of another, without malice, express or implied, the trial court explained that definition under the evidence before the jury as follows:

"The defendant * * * claims that the shooting * * * was the result of an accidental discharge of the weapon he then held in his hands, and * * * he substantially claims that he had the weapon for the purpose of frightening Michael Earl Lawson into leaving the bedroom and not for the purpose of shooting anyone, * * * If you find that the shooting which caused the death of Michael Lawson was an accident [as defined elsewhere in this instruction], you should acquit the defendant of the charge of murder in the first degree and also the charge of murder in the second degree. But if a person negligently, recklessly and heedlessly handles a firearm in such manner while attempting to frighten another one that it is discharged and thereby kills the person he was attempting to frighten, he will not be excused but his offense will be manslaughter as the crime is hereinbefore defined to you, though the firearm was pointed in the direction of the deceased by accident and with no design to wound or kill. * * *"

Defendant concedes this was his theory of the shooting but states also that there was other evidence tending to show heat of passion and provocation. He says he was entitled to the benefit of such evidence in the manslaughter instruction. Defendant requested such an instruction.

Defendant failed to point out, either in the record or in his brief and argument, the testimony which he thinks supports this argument, but it must be that of Brenda Coffee, his daughter, who testified to the events immediately preceding the shooting. We doubt if her testimony was sufficient to permit the instruction defendant wanted.

Even if it were, however, there is no reversible error in its omission here.

We have held several times that when one is convicted of a higher degree of crime, an error in instructing on the lower is not prejudicial error. State v. Rutledge, 243 Iowa 179, 191, 47 N.W.2d 251, 259; State v. Ebelsheiser, 242 Iowa 49, 59, 43 N.W.2d 706, 712; State v. Baratta, 242 Iowa 1308, 1321, 49 N.W.2d 866, 873–874. See also 41 C.J.S. Homicide § 371, pages 155–158.

What we said in the Rutledge case is particularly applicable here:

"Error is assigned to the omission from instruction 18 of a statement that if the killing was committed in the heat of passion, induced by adequate provocation, the crime of murder would be reduced to manslaughter. Although such a statement might well have been included on this instruction on manslaughter we do not think its omission constitutes reversible error. One reason is that defendant was convicted of murder in the second degree, and the jury did not reach and had no reason to consider this instruction on the included offense of manslaughter. Hence, the jury could not have been misled by the claimed error in the instructions upon manslaughter."

And in the Baratta opinion we find this:

" * * * Moreover, the jury found defendant guilty of an offense of a higher degree than manslaughter; and while it is not always that it can be said that error, if such there be, in a definition of an offense of a lower grade than the one of which the accused is found guilty is without prejudice, we think it is so here. The jury was clearly, unequivocally, and properly told that one important distinction between second-degree murder and manslaughter is the requirement of malice for the former. It must have found malice present, and so could hardly have returned a verdict of manslaughter. We have often held that, generally, a finding of guilty of a higher offense makes error in defining lower offenses without prejudice."

Relating those statements to the circumstances of the present case, we find the jury was clearly and unequivocally told that murder, both first and second degree, involves malice but manslaughter does not. This was pointed out not once, but several times, particularly in instructions 15 and 18.

By returning a verdict of guilty on second degree murder the jury necessarily found the killing was done with malice. Therefore they did not reach the instruction on manslaughter. Error in that instruction, if there was error, is rendered harmless by the second-degree murder verdict.

IV. The last assignment raises the question of jury bias which defendant asserts deprived him of a fair trial. He says he was denied due process under Amendment 14, United States Constitution, and was not tried by an impartial jury under Article I, section 10 of the Iowa Constitution.

We give the factual background of this claim, which arises from an incident during trial involving one juror.

Defendant's trial began on February 4, 1969, and ran through February 18th. Court was recessed over Lincoln's birthday on February 12. Relieved of jury duty on that day, Joseph Loucks, the juror in question, returned to his job at Cherry-Burrell Company. There he made highly improper and racially biased statements to a fellow-employee concerning defendant. When asked if the trial had been completed, he replied, "You mean have we hung the nigger, no, we haven't hung the nigger yet."

On February 15, 1969, Mr. Glackin, the employee to whom the remark had been made, reported this event to defendant's counsel, who made no mention of it to the trial court. The case went to the jury on February 17th, five days after the remark was made and two days after it had come

to the attention of defendant's attorneys, and a verdict was returned on February 18th. The first complaint of jury misconduct was made in the motion for new trial, which was filed on the day originally fixed for sentencing, March 5, 1969.

Sentencing was then postponed, a hearing was had, at which Mr. Glackin testified, and a finding made that the juror had indeed made the statements attributed to him. The motion for new trial was overruled and sentence imposed.

We readily agree the statement reflects a state of mind no defendant would want in a juror sitting on his case. If such a statement could have been shown on voir dire, for instance, defendant would undoubtedly have had a good challenge for cause. Undoubtedly, too, if defendant had brought the matter to the trial court's attention when it occurred, the trial court would have taken appropriate action to forestall possible prejudice. It could have then questioned the juror to determine if any actual bias existed; it could have questioned other jurors to see if bias or prejudice had been injected into the jury room by this juror; it could have withdrawn Mr. Loucks and substituted one of the two alternate jurors in his place; or, if necessary, it could have declared a mistrial.

Instead of being able to prevent impending harm, as it would if timely objection had been made, the trial court, after the verdict was in, was instead faced with a claim there had been a bad trial for a reason of which the trial court was unaware but which was known to the party now complaining of the very result he could have avoided.

It is well established that objections to trial irregularities must be made as soon as possible, and in any event prior to verdict. 53 Am.Jur., Trials, section 854, page 623; 39 Am.Jur., New Trial, section 71, page 86. The fact that defendant is asserting important constitutional rights have been violated does not help him. One may

waive those rights as well as lesser ones. State v. Berg, 237 Iowa 356, 361, 21 N.W. 2d 777, 780–781; State v. LaMar, 260 Iowa 957, 968–970, 151 N.W.2d 496, 503–504; State v. Delano (Iowa), 161 N.W.2d 66, 73; Johnson v. Bennett, 8 Cir., 414 F.2d 50, 56, citing as authority Fay v. Noia, 372 U.S. 391, 438–439, 83 S.Ct. 822, 9 L.Ed.2d 837. See also State v. Dwinells, 259 Iowa 945, 950, 146 N.W.2d 231, 234, and authorities there cited.

Defendant was entitled to have a fair trial by an impartial jury, and the State has established procedures and safeguards to guarantee that result. However, a defendant may not sit by, refuse to avail himself of these procedures to right a known wrong, and then, after conviction, use that same wrong to secure for himself a second chance. We are shown no authority which renders the State helpless against this sort of imposition and abuse.

There are numerous cases saying a defendant must act in declaring a known error or irregularity while some remedy can still be worked; otherwise he waives it. Some involve constitutional questions, others deal with a variety of procedural matters. We list a few from other jurisdictions which hold failure to make timely objection waives the error later complained of. State v. McGriff (1968), 7 Ariz.App. 498, 441 P.2d 264, 269 (waiver of right to voluntariness hearing); Marshall v. Indiana (1970), Ind., 258 N.E.2d 628, 631 (waiver of constitutional right to a public trial); State v. Fischer (1968), Me., 238 A.2d 210, 215 (waiver of possible jury bias); State v. Hays (1966), 100 Ariz. 371, 414 P.2d 745, 746 (waiver of right to assert illegal search and seizure); Flannery v. Commonwealth (1969), Ky.App., 443 S. W.2d 638, 642 (waiver of right to claim improper separation of jury); State v. Collins (1967), 276 Minn. 459, 150 N.W.2d 850, 861 (waiver of alleged jury misconduct); State v. Baril (1969), Vt., 250 A.2d 732, 735 (waiver of alleged misconduct of trial judge and prosecutor); United States v. Myerson (1966), 2 Cir., 368 F.2d 393,

395 (waiver of jury irregularity); United States v. Clancy (1960), 7 Cir., 276 F.2d 617, 636 (waiver of claim of jury prejudice); People v. Martinez, 264 Cal.App.2d 906, 70 Cal.Rptr. 918, 922 (waiver of alleged jury misconduct); Missouri v. McCullough (1967), Mo., 411 S.W.2d 79, 81 (waiver of alleged misconduct of trial court); House v. United States (1967), D.C.App., 234 A.2d 805, 808 (waiver of absence of official reporter); Fabian v. United States, 8 Cir., 358 F.2d 187, 191 (waiver of alleged prejudice of juror).

We, too, have several times found waiver from a failure to make timely objection when given ample opportunity to do so. State v. Post, 255 Iowa 573, 580, 581, 123 N.W.2d 11, 14–15; State v. Wallace, 152 N.W.2d 266, 268; State v. Myers, 257 Iowa 857, 860, 135 N.W.2d 73, 75. See also State v. Allnutt, 261 Iowa 897, 900–905, 156 N.W.2d 266, 270, and citations, where we discussed at length the obligation of a defendant to make his claim, if it is then known, at a time when it is possible to remedy the alleged wrong.

■ If, indeed, defendant did not have a fair trial, it is only because he failed to avail himself of the procedural safeguards at his disposal. One reason for providing alternate jurors is to avoid just such a dilemma as arose here. Rule 189, Rules of Civil Procedure, provides one or two alternates may be selected at the same time the other jurors are picked. The rule then says, "Alternate jurors shall, in the order they were drawn, replace any juror who becomes unable to act, *or is disqualified,* before the jury retires, and if not so needed shall then be discharged." (Emphasis supplied).

If the incident about which objection is now made had been promptly reported to the court, and if, upon investigation the offending juror had been found to be disqualified, the court could have utilized this rule to replace the bad juror with a good one. Nevertheless defendant's counsel elected to permit Mr. Loucks to go unchallenged, remaining silent while the case was submitted to the jury and while the trial court dismissed the alternate jurors who could have made the question of bias and prejudice moot.

This was not the result of a belated discovery of prejudicial facts; nor was it due to mistake or inadvertence. It was rather the intentional and deliberate forbearance from exercising a known right at the only time such exercise could be effective. This can only be laid to trial strategy. We hold it amounts to a waiver of defendant's right to rely on the alleged bias of the juror as a ground for new trial.

We find no reversible error in the assignments of error and we accordingly affirm the judgment of the trial court.

Affirmed.

All Justices concur.