# IN THE SUPREME COURT OF IOWA

No. 19–0734

Submitted October 15, 2020—Filed June 18, 2021

**STATE OF IOWA,**

Appellee,

vs.

**HANNAH MARIE KILBY,**

Appellant.

---

Appeal from the Iowa District Court for Polk County, William A. Price, Judge.

A defendant appeals her conviction for operating a motor vehicle while intoxicated, arguing that the district court erred by allowing evidence that she refused a breath test. **AFFIRMED.**

Waterman, J., delivered the opinion of the court, in which Christensen, C.J., and Mansfield and McDermott, JJ., joined. McDonald, J., filed a special concurrence, in which Oxley, J., joined. Appel, J., filed a dissenting opinion.

Grant C. Gangestad (argued) of Gourley, Rehkemper, & Lindholm, P.L.C., West Des Moines, for appellant.

Thomas J. Miller, Attorney General, Linda J. Hines (argued), Assistant Attorney General, John P. Sarcone, County Attorney, and Maurice Curry, Assistant County Attorney, for appellee.

**WATERMAN, Justice.**

In this appeal, a defendant convicted of driving while intoxicated asks us to strike down as unconstitutional Iowa Code section 321J.16, which allows into evidence her refusal to submit to a breathalyzer test. The district court denied her motion in limine to exclude evidence of her test refusal and convicted her of operating a motor vehicle while intoxicated. We retained her appeal to decide her constitutional claims.

The defendant relies on *State v. Pettijohn*, 899 N.W.2d 1, 38–39 (Iowa 2017), which held article I, section 8 of the Iowa Constitution requires a search warrant for a breathalyzer test of an intoxicated boater. She argues that *Pettijohn* should be extended to drunken driving cases, that the State was thus required to get a search warrant to compel her submission to a breath test, that her test refusal is inadmissible without a warrant, and that allowing her test refusal into evidence penalized her exercise of her constitutional right to refuse the warrantless breath test.

On our review, for the reasons explained below, we overrule *Pettijohn* and hold that search warrants are not required for breathalyzer tests of either boaters or drivers when law enforcement has probable cause to believe that intoxicated boating or driving occurred. Although we could decide this case based on the distinction between the intoxicated driving and the intoxicated boating laws recognized four years ago by the special concurrence in *Pettijohn*, the distinction is artificial and has led to uncertainty. We believe the best course is to overrule *Pettijohn*.

Once it is clear that law enforcement had a right to obtain a breath test from the defendant without a warrant, this becomes an easy case to decide. Defendants have a *statutory* right to refuse chemical testing, but that choice carries a *statutory* evidentiary consequence under Iowa Code section 321J.16: the test refusal is admissible in the criminal trial. We

therefore reject defendant's constitutional challenge to section 321J.16 and join the majority of courts holding that it is not an unconstitutional penalty to admit into evidence the defendant's refusal to submit to a breath test.

## I. Background Facts and Proceedings.

On the night of July 28, 2018, Des Moines police officer Brian Kelley responded to a report that a driver was attempting to leave the scene of a hit-and-run accident. He found Hannah Kilby behind the wheel of her 2002 Chrysler van, parked in the street with several persons around her. The bystanders told Officer Kelley that Kilby hit someone in the parking lot of Extra Innings (a bar) and that when she tried to leave, they stopped her. Kilby told Officer Kelley that she had been at Extra Innings and was leaving to meet a friend. She said that when she was backing up in the parking lot, she heard a loud bang, and then someone began pounding on her van. Officer Kelley observed that Kilby had "red watery blood shot eyes and a strong odor of an alcoholic beverage emanating from her breath." When he asked her how much she had to drink, Kilby answered, "[T]wo or three." She did not respond when twice asked if she was "sober."

At 11:25 p.m., Officer Christopher Mock arrived to assist, and he too smelled alcohol on Kilby's breath. Kilby told Officer Mock that she had a couple of mixed drinks called "Vegas Bombs" before driving her van. She appeared drowsy and was crying and mumbling at times. Her speech was slurred. Officer Mock asked Kilby to perform field sobriety tests. Kilby consented to the Horizontal Gaze Nystagmus (HGN) test. Her balance was unsteady as she stepped into position. Her HGN test showed four out of six signs of intoxication.

Officer Mock next asked Kilby to perform a walk-and-turn test and one-leg-stand test; she refused to perform either test. At 11:45 p.m.,

Officer Mock asked Kilby to submit to a preliminary breath test (PBT), she refused. Kilby was arrested and taken to the Des Moines police station. There, Officer Mock read her the implied-consent advisory.[1] At 12:32 a.m., Officer Mock asked her to consent to the Datamaster breathalyzer test; Kilby refused the breath test.

On September 6, the State filed a trial information charging Kilby with operating while intoxicated, second offense.[2] Kilby pled not guilty. On November 19, Kilby filed a motion in limine to exclude evidence of her refusal to submit to the breath test, citing *Pettijohn* for the proposition that a search warrant is required to conduct a breath test under article I, section 8 of the Iowa Constitution. She filed a twelve-page supporting brief on January 4, 2019, that argued *Pettijohn* applied to vehicular driving cases. The State filed a resistance arguing *Pettijohn* was limited to boating and evidence of Kilby's test refusal was admissible under Iowa Code

---

[1]The advisory read to Kilby stated, in part:

The implied consent advisory. The implied consent law requires that a peace officer advise a person of the following:

Refusal to submit to the withdrawal of a body specimen for chemical testing will result in revocation of your privilege to operate a motor vehicle for one year if you have not previously been revoked within the previous twelve years under the implied consent or drunk driving laws of this state or for two years if you have one or more revocations within the previous twelve years. . . . Refusal to submit to a blood or urine test for drugs other than alcohol or a combination of alcohol and another drug constitutes a refusal and the above mentioned revocation periods will apply.

Now, if you consent to chemical testing, and the test results indicate an alcohol concentration of eight hundredths or more, or if the test results indicate the presence of a controlled substance or other drugs, or a combination of alcohol and another drug in violation of Chapter 321J.2, the department shall revoke your privilege to operate a motor vehicle for a period of 180 days. If you have no revocation within the previous twelve years under the drunk driving or implied consent law, or for one year if you have one or more previous revocations under those provisions.

[2]Kilby had been convicted of operating a motor vehicle while intoxicated in 2014.

section 321J.16. The district court heard oral arguments on Kilby's motion on January 15. Kilby further argued that because she had a constitutional right to refuse to consent, offering evidence of her refusal penalized that right in violation of due process rights under the Fourteenth Amendment of the Federal Constitution and article I, section 9 of the Iowa Constitution.

On April 5, the district court denied Kilby's motion in limine. The district court devoted several pages of its ruling to *Pettijohn*, analyzing whether that drunken boater case required exclusion of Kilby's test refusal. The court stated, "The statutory scheme presente[d] here (invoking implied consent and admitting the results) is one that serves a compelling governmental interest. *Welch v. Iowa DOT*, 801 N.W.2d 590 (Iowa 2011)." The district court determined that under existing Iowa law, her breath test refusal was admissible and allowing such evidence would not violate Kilby's rights under the Federal or Iowa Constitutions.

Kilby stipulated to a bench trial on the minutes of testimony. The court found Kilby guilty of operating a motor vehicle while intoxicated based on evidence including Kilby's refusal to take the breath test.

## II. Standard of Review.

We review constitutional challenges to Iowa Code chapter 321J de novo. *State v. McGee*, ___ N.W.2d ___, ___ (Iowa 2021).

> In doing so, we must remember that statutes are cloaked with a presumption of constitutionality. The challenger bears a heavy burden, because it must prove the unconstitutionality beyond a reasonable doubt. Moreover, "the challenger must refute every reasonable basis upon which the statute could be found to be constitutional." Furthermore, if the statute is capable of being construed in more than one manner, one of which is constitutional, we must adopt that construction.

*State v. Senn*, 882 N.W.2d 1, 6 (Iowa 2016) (quoting *State v. Thompson*, 836 N.W.2d 470, 483 (Iowa 2013)).

### III. Analysis.

"[T]he criminal process often requires suspects and defendants to make difficult choices." *State v. Hillery*, 956 N.W.2d 492, 500 (Iowa 2021) (quoting *South Dakota v. Neville*, 459 U.S. 553, 564, 103 S. Ct. 916, 923 (1983)). Specifically, as recognized by the Supreme Court in *South Dakota v. Neville*, "the choice to submit or refuse to take a blood-alcohol test will not be an easy or pleasant one for a suspect to make." 459 U.S. at 564, 103 S. Ct. at 922–23. Detainees are read an advisory[3] and have a statutory right to consult with counsel before taking or refusing the breath test. *State v. Sewell*, ___ N.W.2d ___, ___ (Iowa 2021). But the choice can be a difficult one because consenting to the breath test may reveal a blood alcohol level above the legal limit (.08 percent), making a criminal conviction more likely, while refusing the test carries administrative (revocation of driver's license) and evidentiary consequences. Iowa Code §§ 321J.9, .16 (2018). Iowa Code section 321J.16 provides,

> If a person refuses to submit to a chemical test, proof of refusal is admissible in any civil or criminal action or proceeding arising out of acts alleged to have been committed while the person was operating a motor vehicle in violation of section 321J.2 or 321J.2A.[4]

---

[3] *See generally* Iowa Code § 321J.8 (governing advisory); *State v. Hutton*, 796 N.W.2d 898, 905 (Iowa 2011) ("The purpose of section 321J.8's advisory requirement ' "is to provide a person who has been required to submit [to] a chemical test a basis for evaluation and decision-making in regard to either submitting or not submitting to the test." ' " (*quoting Voss v. Iowa Dep't of Transp.*, 621 N.W.2d 208, 212 (Iowa 2001) (en banc))).

[4] Iowa Uniform Jury Instruction 2500.7 provides:

**2500.7 OWI - Refusal To Take Test.** The defendant was asked to give a [breath] [blood] [urine] sample so it could be analyzed to determine the percent of alcohol in [his][her]blood. [The defendant refused.] [It is alleged the defendant refused].

A person is not required to give a sample of any bodily substance; however, you may consider a refusal in reaching your verdict.

Relying on our 2017 decision in *Pettijohn*, Kilby argues this statute is unconstitutional. The State responds that *Pettijohn* is limited to drunken boating cases, did not involve a test refusal, and was wrongly decided. We agree with the State and overrule *Pettijohn* as manifestly erroneous. "The course we must follow is not to ignore our mistakes, but to correct them." *State v. Williams*, 895 N.W.2d 856, 867 (Iowa 2017).

Eight decades ago, our court rejected constitutional challenges to the admissibility of a test refusal in *State v. Benson*, 230 Iowa 1168, 1171–72, 300 N.W. 275, 277 (1941). Four decades ago, we rejected a due process challenge to the admissibility of test-refusal evidence under the implied-consent statute in *State v. Knous*, 313 N.W.2d 510, 512 (Iowa 1981). We noted that "[i]n giving the arrested person a right to refuse the test, the legislature obviously sought to give the person the right to make a voluntary decision." *Id.* But we concluded that this statutory choice "is not mandated by the due process, privilege against self-incrimination or right to counsel provisions of the United States Constitution." *Id.* (citing *Schmerber v. California*, 384 U.S. 757, 760–65, 86 S. Ct. 1826, 1830–33 (1966), *abrogated on other grounds as recognized by In re Grand Jury Subpoena Duces Tecum Dated Oct. 29, 1992*, 1 F.3d 87, 90–93 (2d Cir.

---

Iowa State Bar Ass'n, Iowa Criminal Jury Instruction 2500.7 (2018). The jury instruction cites to Iowa Code section 321J.16 for authority. *See id.* We approve this instruction as to breath test refusals.

"Most state courts admit evidence of refusal as relevant because the refusal is conduct that shows a consciousness of guilt in the same manner as destruction of evidence, flight, or threats against witnesses." *Cox. v. People*, 735 P.2d 153, 158 (Colo. 1987) (en banc) (collecting cases); *see also State v. Stevens*, 580 A.2d 493, 496 (Vt. 1990) (noting that the state had the burden to prove intoxication and "was entitled to let the jury know that because defendant refused to perform breath or dexterity tests, the State's evidence was limited to the arresting officer's observations of defendant" and that, ultimately, "[a]ny inferences to be drawn from the refusal were for the jury's consideration, and the jury could ignore the refusal issue if it chose"). The jury determines the weight to give the test refusal, and "the inference of intoxication . . . is rebuttable." *Cox*, 735 P.2d at 159.

1993)). Until *Pettijohn*, we continued to uphold the admissibility of test refusals under Iowa Code section 321J.16 without any suggestion of constitutional infirmity. *See, e.g., State v. Bloomer*, 618 N.W.2d 550, 552–53 (Iowa 2000) (en banc).

Fifth Amendment cases decided after *Benson* have excluded evidence of a defendant's invocation of the right to remain silent or avoid self-incrimination. The leading case is *Griffin v. California*, 380 U.S. 609, 612–15, 85 S. Ct. 1229, 1232–33 (1965). Yet, after *Griffin*, the United States Supreme Court squarely rejected constitutional challenges to the admissibility of blood alcohol test refusals under implied-consent statutes like Iowa's. *Neville*, 459 U.S. at 558–64, 103 S. Ct. at 920–23. *Neville* remains good law on this point. *See* 387 U.S. 523 *Birchfield v. North Dakota*, 579 U.S. ____, ____, 136 S. Ct. 2160, 2185 (2016) ("Our prior opinions have referred approvingly to the general concept of implied-consent laws that impose civil penalties and evidentiary consequences on motorists who refuse to comply. . . . [N]othing we say here should be read to cast doubt on them." (citations omitted)).

"[N]umerous other state courts also have recognized that *Birchfield* [*v. North Dakota*] reinforced that states may lawfully 'impose civil penalties *and evidentiary consequences* on motorists who refuse to comply' with a request for a blood draw." *State v. Levanduski*, 948 N.W.2d 411, 417 n.6 (Wis. Ct. App. 2020) (emphasis in original) (quoting *Birchfield*, 579 U.S. at ____, 136 S. Ct. at 2185); *see also Fitzgerald v. People*, 394 P.3d 671, 676 (Col. 2017) (en banc) (noting the Colorado law at issue "merely allows a driver's refusal to submit to testing to be entered into evidence if the driver is prosecuted for DUI" and "the Supreme Court has all but said that anything short of criminalizing refusal does not impermissibly burden or penalize a defendant's Fourth Amendment right to be free from an

unreasonable warrantless search," so "introducing evidence of [a defendant's] refusal to consent to a blood or breath test . . . did not impermissibly burden his Fourth Amendment right"); *State v. Mulally*, No. 119,673, 2020 WL 4032827, at *15–16 (Kan. Ct. App. July 17, 2020), (analyzing *Birchfield* and Kansas precedent to reject argument that admission of test refusal penalized state and federal constitutional rights), *review denied* (Nov. 24, 2020); *State v. Hood*, 917 N.W.2d 880, 892–93 (Neb. 2018) (noting that *Birchfield* "clarified that the propriety of evidentiary consequences for a driver's refusal to submit to a blood draw should not be questioned" and holding that "evidence of a driver's refusal to submit to a warrantless blood draw is admissible in a DUI prosecution"); *State v. Storey*, 410 P.3d 256, 269 (N.M. Ct. App. 2017) (concluding that "*Birchfield* does not prohibit the introduction of evidence of, and commentary on, evidence establishing a defendant's refusal to take a blood test"); *People v. Vital*, No. 2016NY041707, 2017 WL 350797, at *2 (N.Y. Crim. Ct. Jan. 20, 2017) (rejecting argument that *Birchfield* prohibited evidence of test refusal at criminal trial); *Commonwealth v. Bell*, 211 A.3d 761, 775–76 (Pa. 2019) (noting that the *Birchfield* Court "did not back away from its prior approval of other kinds of consequences for refusal, such as 'evidentiary consequences'" and holding Pennsylvania's statutory "evidentiary consequence" allowing "the admission of that refusal at a subsequent trial for DUI—remains constitutionally permissible post-*Birchfield*" (quoting *Birchfield*, 579 U.S. at ___, 136 S. Ct. at 2185)), *cert. denied*, ___ U.S. ___, ___, 130 S. Ct. 934 (Jan. 21, 2020); *Dill v. State*, No. 05–15–01204–CR, 2017 WL 105073, at *1–2 (Tex. App. Jan. 11, 2017) (holding the trial court did not err in denying defendant's motion to "exclude evidence of her refusal to provide a breath sample" because there was no violation of the Fourth Amendment); *State v. Rajda*, 196 A.3d 1108,

1118–19 (Vt. 2018) (analyzing *Birchfield* to conclude the Fourth Amendment does not bar admission into evidence that defendant refused to submit to chemical test); *State v. Baird*, 386 P.3d 239, 247–48 (Wash. 2016) (en banc) (plurality opinion) (holding that evidence of test refusal remains admissible after *Birchfield*). *But cf. Commonwealth v. McCarthy*, No. 2019–SC–0380–DG, 2021 WL 1679306, at *13 (Ky. Apr. 29, 2021) (holding evidence of defendant's refusal of a *blood* test was inadmissible while noting that had he refused a *breath* test, "nothing in *Birchfield* [or Kentucky precedent] would have precluded admission of that refusal of a breath test as evidence against him in the DUI prosecution"). Nearly all courts confronting the question after *Birchfield* reject state and federal constitutional challenges to the admissibility of evidence of test refusals in the criminal trial for operating a motor vehicle while intoxicated.

In *Pettijohn*, however, our court declined to follow *Birchfield* under the Iowa Constitution. 899 N.W.2d at 24–25. The *Birchfield* Court held the Fourth Amendment allowed warrantless breath tests as a search incident to arrest, while requiring a search warrant for the more intrusive blood tests of a conscious driver absent exigent circumstances. 579 U.S. at ___, 136 S. Ct. at 2184–85. *Pettijohn* nevertheless held that search warrants were required to conduct *breath* tests of a suspected drunken boater under article I, section 8 of the Iowa Constitution. 899 N.W.2d at 38–39. The court left open the question whether the warrant requirement applied to breath tests of motorists. *Id.* at 38 ("Any decision relating to operating a motor vehicle while under the influence will have to wait for another case raising its constitutionality."). But the majority's reasoning applied equally to boaters and drivers. The special concurrence relied on a $500 penalty for boater test refusals as a reason to differentiate boating and driving cases. *Id.* at 40–41 (Cady, C.J., concurring specially). Three

justices dissented. *Id.* at 42–52 (Waterman, J., dissenting, joined by Mansfield and Zager, JJ.).

In *Pettijohn*, a water-patrol officer for the Iowa Department of Natural Resources (DNR) stopped a pontoon boat in August 2013 because a passenger was seated at the rear with her feet dangling in the water by the propeller, putting her at risk of a severe injury. *Id.* at 9 (majority opinion). The officer spoke with Dale Pettijohn, the boat operator, and noticed he had bloodshot eyes, seemed nervous, and avoided eye contact. *Id.* at 10. There were two coolers on the boat. *Id.* A conservation officer joined them at the dock and detected an odor of an alcoholic beverage on Pettijohn's breath and noticed he slurred his words and had bloodshot eyes. *Id.* The officer administered field tests for sobriety and determined Pettijohn had been operating the boat while intoxicated. *Id.* Pettijohn was handcuffed, taken to the Polk City Police Department, and read the "Implied Consent Advisory." *Id.* Pettijohn signed a consent form and submitted to the breathalyzer test, which indicated his blood alcohol level was .194. *Id.*

The state charged Pettijohn with operating a motorboat while under the influence in violation of Iowa Code section 462A.14(1). *Id.* He moved to suppress the breath test results based on his alleged "natural right to use the state's navigable waterways" as well as his argument that the implied-consent procedure was unconstitutional and inaccuracies in the implied-consent advisory rendered his consent involuntary. *Id.* at 10–11. The district court denied his motion to suppress and convicted him following a bench trial on the minutes. *Id.* at 11. We retained his appeal and, after oral argument in September 2015, held the case in abeyance pending the Supreme Court's decision in *Birchfield*. *See id.* We requested supplemental briefing from the parties after *Birchfield* was decided on June 23, 2016, and we carried our case over to the next term. *See id.* Our

court ultimately issued *Pettijohn* on Friday, June 30, 2017, the last day of the next term and just ahead of a busy boating weekend before the July 4 holiday. *See id.* For the first time, our court held that notwithstanding statutory implied-consent laws, article I, section 8 of the Iowa Constitution requires a search warrant for a breath test of a suspect arrested for operating while intoxicated, *id.* at 38–39, even though Pettijohn never raised that argument in district court or in his appellate brief or reply brief and even though *Birchfield* squarely held warrantless breath tests are allowed under the Fourth Amendment. *See* 579 U.S. at \_\_\_, 136 S. Ct. at 2184. As the three-justice dissent in *Pettijohn* stated,

> Pettijohn did not raise the unsupported theories employed by the majority to reverse his conviction. The majority goes well beyond what Pettijohn argued in district court or on appeal and thereby blindsides the State and unfairly reverses the district court on theories never presented in that forum. We are supposed to be impartial adjudicators rather than partisan advocates. And, by concocting new theories on appeal, the majority makes new bad law without allowing the State the opportunity to develop a record affirmatively refuting the flawed factual premise underlying the majority's holding—that warrants can be obtained electronically within minutes. There is no factual support in the record for that premise.

899 N.W.2d at 43–44 (Waterman, J., dissenting).

This term our court expressly limited *Pettijohn* to boating cases. *See McGee*, \_\_\_ N.W.2d at \_\_\_. Yet defendants undoubtedly will continue to argue *Pettijohn's* reasoning supports a variety of constitutional challenges to Iowa's implied-consent laws governing motorists, including recurring challenges such as Kilby's to the admissibility of breath test refusals. We now elect to clear up the confusion that will persist while *Pettijohn* remains on the books. "[S]tare decisis does not prevent the court from reconsidering, repairing, correcting or abandoning past judicial announcements when error is manifest, including error in the

interpretation of statutory enactments." *Miller v. Westfield Ins.*, 606 N.W.2d 301, 306 (Iowa 2000) (en banc). *Pettijohn* is manifestly erroneous for multiple reasons.

First, by requiring a search warrant for a breath test, *Pettijohn* conflicts with *Birchfield,* prior Iowa precedent, and the "legion" of state courts. *See Pettijohn*, 899 N.W.2d at 46–51 (Waterman, J., dissenting).

Second, as we recently explained in depth, following *Pettijohn* to require search warrants for breath tests would impose significant burdens on law enforcement and the judiciary without advancing the civil liberties of motorists. *See McGee*, ___ N.W.2d at ___. This case is typical. Kilby refused the breathalyzer test after midnight. The statutory prerequisites to request the breath test were clearly satisfied. Officers observed Kilby's bloodshot watery eyes, the odor of alcohol on her breath, her unsteady balance, slurred speech, crying and confusion. The HGN test indicated four signs of intoxication. Kilby admitted drinking two or three alcoholic mixed drinks called "Vegas Bombs" before getting behind the wheel and, according to witnesses, backing into someone and attempting to flee the scene. She repeatedly declined to answer whether she was "sober." Imposing a warrant requirement would not have protected her from an unconstitutional search. Notably, Kilby does not argue a neutral magistrate would have declined a warrant. To the contrary, any judicial officer would have issued a warrant for a chemical test under these facts. Requiring a warrant would take the officer away from other duties to complete a warrant application and interrupt a judicial officer in the middle of the night for no gain in the driver's civil liberty. *See Pettijohn*, 899 N.W.2d at 44 (Waterman, J., dissenting) ("How have we advanced the rights of drunken boaters, other than allowing them to avoid the legal consequences of their actions?"). Operating while intoxicated cases don't

implicate the particularity requirement that precludes general warrants and cabins police power. "Only a breath test is at issue here, a procedure that is 'capable of revealing only one bit of information, the amount of alcohol in the subject's breath.' " *Id.* (quoting *Birchfield*, 579 U.S. at ___, 136 S. Ct. at 2177).

Third, extending *Pettijohn*'s reasoning to chapter 321J cases would undermine enforcement of drunk-driving laws, at a cost in lives and to public safety. If breath test refusals were inadmissible, drunk drivers, especially repeat offenders,[5] would be motivated to decline breath tests as well as field tests for sobriety. Lawyers consulted under Iowa Code section 804.20 would advise more detainees to refuse the test. It would become even harder to obtain convictions in test-refusal cases, and more recidivists would remain on the road. Kilby herself is a repeat offender. "[W]e have continuously affirmed that the primary objective of the implied consent statute is the removal of dangerous and intoxicated drivers from Iowa's roadways in order to safeguard the traveling public." *State v. Walker*, 804 N.W.2d 284, 290 (Iowa 2011) (quoting *Welch v. Iowa Dep't of Transp.*, 801 N.W.2d 590, 594 (Iowa 2011)); *accord Birchfield*, 579 U.S. at ___, 136 S. Ct. at 2166 ("Drunk drivers take a grisly toll on the Nation's roads, claiming thousands of lives, injuring many more victims, and inflicting billions of dollars in property damage every year. To fight this problem, all States have laws that prohibit motorists from driving with a blood alcohol concentration (BAC) that exceeds a specified level."); *State v.*

---

[5]Iowa Code chapter 321J provides escalating penalties for recidivists convicted of operating a motor vehicle while intoxicated: a first offense is a serious misdemeanor punishable by up to one-year imprisonment, a fine of up to $1250, and revocation of the driver's license for up to one year; a second offense is an aggravated misdemeanor punishable by up to two years' imprisonment, a fine of up to $6250, and revocation of the driver's license for one year; and a third offense (and each subsequent offense) is a class "D" felony punishable by up to five years' imprisonment, a fine of up to $9375, and revocation of the driver's license for six years. *See* Iowa Code § 321J.2(2)–(5).

*Garcia*, 756 N.W.2d 216, 220 (Iowa 2008) (stating that Iowa's implied-consent law "was enacted to help reduce the appalling number of highway deaths resulting in part at least from intoxicated drivers" (quoting *State v. Wallin*, 195 N.W.2d 95, 96 (Iowa 1972))); *State v. Comried*, 693 N.W.2d 773, 775 (Iowa 2005) ("We have said the purpose of chapter 321J is ' "to reduce the holocaust on our highways[,] part of which is due to the driver who imbibes too freely of intoxicating liquor." ' " (alteration in original) (quoting *State v. Kelly*, 430 N.W.2d 427, 429 (Iowa 1988) (en banc))).

Fourth, *Pettijohn* relied heavily on an inapplicable decision, *State v. Gaskins*, 866 N.W.2d 1, 14 (Iowa 2015), that departed from federal and prior Iowa precedent to limit the search-incident-to-arrest (SITA) doctrine. *See Pettijohn*, 899 N.W.2d at 48–49 (Waterman, J., dissenting). *Gaskins* addressed the search of a sealed container (a locked safe) in an unoccupied vehicle after the driver was removed from the vehicle and arrested. *See id.* at 48; *Gaskins*, 866 N.W.2d at 3–4.[6] A breath test is a form of a search of a person. We recently noted the SITA doctrine still allows the warrantless search of an arrestee's person. *See Hillery*, 956 N.W.2d at 501 (recognizing if suspect had been arrested, the narcotics in his pocket inevitably would have been discovered in the search incident to his arrest). *Gaskins* does not preclude a warrantless breath test incident to an arrest; to the contrary, *Gaskins* expressly allows a warrantless SITA to "preserv[e] evidence from destruction." *See* 866 N.W.2d at 14; *see also Birchfield*, 579 U.S. at ___, 136 S. Ct. at 2182 (equating "preventing the loss of blood alcohol evidence as the result of the body's metabolism of alcohol" with

---

[6]We subsequently held such searches are still allowed under the automobile exception to the warrant requirement. *See State v. Storm*, 898 N.W.2d 140, 156 (Iowa 2017).

"[s]topping an arrestee from destroying evidence" because "[i]n both situations the State is justifiably concerned that evidence may be lost").

Fifth, *Pettijohn*'s faux incrementalism relied on a contrived distinction between the monetary penalties for test refusals in drunken boating and driving cases. *See Pettijohn*, 899 N.W.2d at 42 (Waterman, J., dissenting) ("Now ask yourself, which is a more serious consequence for refusal: (1) losing your driver's license for a year and having to pay $200, or (2) being unable to operate a boat for a year and having to pay $500?"). Clearly *Pettijohn*'s reasoning applied equally to driving cases, as defense counsel routinely argue. *Pettijohn* is manifestly erroneous and is hereby overruled.

Without *Pettijohn*, Kilby has no constitutional right to refuse a breath test as a search incident to her arrest. Kilby is not aided by *State v. Thomas*, which held that under the rules of evidence, it was prejudicial error to allow evidence that the defendant refused to consent to a warrantless search of her home. 766 N.W.2d 263, 271–72 (Iowa Ct. App. 2009). A warrant is required to search a home; no warrant is required for a breath test of a suspected drunken driver or boater when statutory implied-consent requirements are met. Allowing evidence of Kilby's refusal of the breathalyzer test therefore did not penalize her exercise of a constitutional right, and her challenge to Iowa Code section 321J.16 fails. The district court correctly denied Kilby's motion to suppress.

**IV. Disposition.**

For the foregoing reasons, we affirm the district court's judgment.

**AFFIRMED.**

Christensen, C.J., and Mansfield and McDermott, JJ., join this opinion. McDonald, J., files a special concurrence, in which Oxley, J., joins. Appel, J., files a dissenting opinion.

**McDONALD, Justice (concurring specially).**

The Iowa Constitution does not prohibit the state from offering evidence of a defendant's refusal to submit to a chemical breath test for alcohol and arguing an adverse inference of guilt should be drawn from the defendant's refusal. Kilby's arguments to the contrary are not supported by the original public meaning of the Iowa Constitution or the most relevant precedents shedding light on the original public meaning of the Iowa Constitution.

I.

The defendant first contends her state constitutional right to be free from unreasonable seizures and searches affords her a constitutional right to refuse a chemical breath test for alcohol. The defendant's argument is contrary to the original public meaning of article I, section 8 of the Iowa Constitution.

Article I, section 8 provides, "The right of the people to be secure in their persons, houses, papers and effects, against unreasonable seizures and searches shall not be violated." At the time of America's founding and Iowa's founding, the prohibition against "unreasonable" seizures and searches had a particular meaning. *See State v. Wright*, ___ N.W.2d ___, ___ (Iowa 2021) (discussing history of the Fourth Amendment to the Federal Constitution and article I, section 8). "Originally, the word 'unreasonable' in the Fourth Amendment likely meant 'against reason'—as in 'against the reason of the common law.'" *Carpenter v. United States*, 585 U.S. ___, ___, 138 S. Ct. 2206, 2243 (2018) (Thomas, J., dissenting) (quoting Laura K. Donohue, *The Original Fourth Amendment*, 83 U. Chi. L. Rev. 1181, 1270 (2016)). Thus, "[e]arly American courts . . . embraced . . . common law principles of search and seizure." *Torres v. Madrid*, 592 U.S.

___, ___, 141 S. Ct. 989, 996 (2021); *see also United States v. Carloss*, 818 F.3d 988, 1006 (10th Cir. 2016) (Gorsuch, J., dissenting) (stating the Fourth Amendment "incorporated existing common law restrictions on the state's investigative authority"); *Santo v. State*, 2 Iowa (Clarke) 165, 215 (1855) (stating the term "unreasonable" referred to revolution-era practices); Thomas Y. Davies, *Recovering the Original Fourth Amendment*, 98 Mich. L. Rev. 547, 554–55 (1999) (discussing history of Fourth Amendment); 3 Joseph Story, *Commentaries on the Constitution of the United States* §§ 1894–1895 (1833) (stating the prohibition against unreasonable seizures and searches "is little more than the affirmance of a great constitutional doctrine of the common law").

At common law, peace officers had broad authority to arrest offenders and suspected offenders with or without a warrant. *See generally* 4 William Blackstone, *Commentaries on the Laws of England* ch. 21 (1768) (discussing the common law of arrest). The authority to arrest offenders or suspected offenders without a warrant was justified due to peace officers' "great original and inherent authority with regard to arrests." *Id.* In addition to this original and inherent authority, nightwalker statutes allowed watchmen and constables, by *virtute officii*, to "arrest all offenders, and particularly nightwalkers, and commit them to custody till the morning." *Id.*

The constitutional prohibition against unreasonable searches and seizures, as originally understood, did not limit the inherent authority of peace officers to conduct warrantless arrests.

> But it is no where said, that there shall be no arrest without warrant. To have said so would have endangered the safety of society. . . . These are principles of the common law, essential to the welfare of society, and not intended to be altered or impaired by the constitution. The whole section

indeed was nothing more than an affirmance of the common law . . . .

*Wakely v. Hart*, 6 Binn. 316, 318–19 (Pa. 1814). Stated differently, it was not against reason—as in against the reason of the common law—for peace officers to conduct warrantless arrests. *See Carpenter*, 585 U.S. at ___, 138 S. Ct. at 2243 (Thomas, J., dissenting).

Iowa's constitutional prohibition against unreasonable seizures, as originally understood, allowed for warrantless arrests. Since the time of Iowa's founding, our law has recognized the inherent authority of peace officers to conduct warrantless arrests. The Code of 1851 allowed an officer to arrest a person without a warrant "[f]or a public offense committed or attempted in his presence" or "[w]here a public offense has in fact been committed and he has reasonable cause for believing the person arrested to have committed it." Iowa Code § 2840(1), (2) (1851). In 1854, this court held an officer could conduct a warrantless arrest. *See Hutchinson v. Sangster*, 4 Greene 340, 342 (Iowa 1854). Like this case, *Hutchinson v. Sangster* involved the warrantless arrest of an intoxicated person. *See id.* at 341–42. In *Hutchinson*, this court explained the "intoxication of appellant, his consequent unfitness for examination, and the difficulty in finding a judicial officer" justified the warrantless arrest. *Id.* at 342. We concluded the power of warrantless arrest was "indispensable to the duties of a peace officer. The power is inherent. The exercise of it often becomes unavoidable." *Id.*

A peace officer's inherent authority to arrest without a warrant was reaffirmed in the Code of 1860. *See* Iowa Code § 4548 (1860). This was unchanged and undisputed for almost 100 years until 1950, when peace officers were granted additional authority to make warrantless arrests. In addition to the previous grounds, a peace officer was granted authority to

make an arrest "[w]here he has reasonable ground for believing that an indictable public offense has been committed and has reasonable ground for believing that the person to be arrested has committed it." Iowa Code § 755.4(3) (1950). In short, it was and is "well settled in this state that a peace officer may arrest without a warrant when he has reasonable grounds for belief that a [crime] has been committed and that the person before him committed it." *State v. Post*, 255 Iowa 573, 582, 123 N.W.2d 11, 16–17 (1963).

Equally well settled in this state is a peace officer's authority to conduct a warrantless search of the person incident to an arrest. In 1876, this court explained:

> It is usual and proper for police officers, upon the arrest of felons to subject them to search and take from them articles found upon their persons. This often affords the evidence whereby a crime is proved or the person arrested is identified as the perpetrator of an offense. . . . Surely there can be no rule of law forbidding a police officer upon the arrest of one charged with a felony, from making a close and careful search of the person of the individual for stolen property, instruments used in the commission of crimes, or any article which may give a clue to the commission of crime or the identification of the criminal. This too may be done promptly on arrest, and not delayed for authority from a court or a superior. The offender would speedily dispose of all such articles which would be found upon his person that might lead to the discovery of crime.

*Reifsnyder v. Lee*, 44 Iowa 101, 103 (1876).

As *Reifsnyder v. Lee* demonstrates, the constitutional prohibition against unreasonable seizures and searches, as originally understood, did not limit a peace officer's inherent authority to conduct a search incident to arrest. *See id.*; *see also Draper v. United States*, 358 U.S. 307, 310–11, 79 S. Ct. 329, 331–32 (1959) ("[T]he arrest, though without a warrant, was lawful and the subsequent search of petitioner's person and the seizure of

the found heroin were validly made incident to a lawful arrest . . . ."); *Agnello v. United States*, 269 U.S. 20, 30, 46 S. Ct. 4, 5 (1925) ("The right without a search warrant contemporaneously to search persons lawfully arrested while committing crime and to search the place where the arrest is made in order to find and seize things connected with the crime as its fruits or as the means by which it was committed, as well as weapons and other things to effect an escape from custody is not to be doubted."); *Post*, 255 Iowa at 582, 123 N.W.2d at 16–17 ("Clearly, the evidence of probable cause for defendant's arrest when he was taken into custody is ample. That being the case, a search and seizure made incident thereto are likewise valid."); *State v. Lyon*, 176 Iowa 171, 175–77, 157 N.W. 742, 743–44 (1916) (holding a peace officer can conduct a warrantless search incident to arrest); *Com. Exch. Bank v. McLeod*, 65 Iowa 665, 667, 19 N.W. 329, 329–30 (1884) ("We think the sheriff was justified in making the search, and in taking from the person all money or property which was in any way connected with the crime charged, or which might serve to identify the prisoner.").

As the relevant cases make clear, a peace officer is allowed to conduct a warrantless search of an arrestee incident to arrest by virtue of the office; the greater power to arrest necessarily includes the lesser power to search. The officer's purpose for conducting the search incident to arrest—whether for the purposes of safety, preventing the destruction of evidence, or gathering evidence of crime—is immaterial to the legality of the search. A chemical breath test for alcohol is a valid search incident to arrest, and Kilby had no constitutional right to decline the test. *See Post*, 255 Iowa at 582, 123 N.W.2d at 16–17; *Lyon*, 176 Iowa at 175–77, 157 N.W. at 743–44; *Com. Exch. Bank*, 65 Iowa at 667, 19 N.W. at 329–30; *Reifsnyder*, 44 Iowa at 103; *see also State v. Knous*, 313 N.W.2d 510,

512 (Iowa 1981) ("In giving the arrested person a right to refuse the test, the legislature obviously sought to give the person the right to make a voluntary decision. However, the arrested person's right to make the decision is not mandated by the due process, privilege against self-incrimination or right to counsel provisions of the United States Constitution."). Nothing in article I, section 8, as originally understood, is to the contrary. *See Knous*, 313 N.W.2d at 512; *Reifsnyder*, 44 Iowa at 103.

This court deviated from the original meaning of article I, section 8 in *State v. Gaskins*, 866 N.W.2d 1 (Iowa 2015), and *State v. Pettijohn*, 899 N.W.2d 1 (Iowa 2017). In *Gaskins*, this court held that an officer can conduct a search incident to arrest for the purposes of "officer safety and protecting evidence." 866 N.W.2d at 12. The *Gaskins* court rejected the "evidence-gathering rationale for warrantless searches incident to arrest under the Iowa Constitution." *Id.* at 13. The court reasoned the evidence-gathering rationale would swallow the textual rule that searches and seizures should be supported by a warrant. *See id.* Relying on *Gaskins*, *Pettijohn* held "a warrantless breath test to determine the [blood alcohol content] of an arrestee suspected of operating a boat while intoxicated does not fall within the search-incident-to-arrest exception to the warrant requirement under article I, section 8." 899 N.W.2d at 25.

Stare decisis does not justify continued adherence to *Gaskins* or *Pettijohn*. Stare decisis has limited application in constitutional matters. The Iowa Constitution provides, "This Constitution shall be the supreme law of the state, and any law inconsistent therewith, shall be void." Iowa Const. art. XII, § 1. Notably, the Iowa Constitution does not distinguish between legislative, executive, and judicial acts. Instead, the Iowa Constitution provides that any law inconsistent therewith "shall be void."

23

*Id.* Thus, "[w]hen faced with a demonstrably erroneous [constitutional] precedent, my rule is simple: We should not follow it. This view of stare decisis follows directly from the Constitution's supremacy over other sources of law—including our own precedents." *Gamble v. United States*, 587 U.S. \_\_\_, \_\_\_, 139 S. Ct. 1960, 1984 (2019) (Thomas, J., concurring). There is "no legitimate reason why a court may privilege a demonstrably erroneous interpretation of the Constitution over the Constitution itself." *Goodwin v. Iowa Dist. Ct.*, 936 N.W.2d 634, 649 (Iowa 2019) (McDonald, J., concurring specially) (quoting *Gamble*, 587 U.S. at \_\_\_, 139 S. Ct. at 1985).

*Gaskins* and *Pettijohn* are both demonstrably erroneous interpretations of article I, section 8 of the Iowa Constitution and should be overruled. Nothing within the original meaning of article I, section 8 or in the relevant precedents applying that original meaning precludes an officer from conducting a warrantless arrest and further conducting a search of the person incident to arrest. The power to arrest and search incident to arrest is inherent in the officer's authority *virtute officii.* In reaching a contrary conclusion, *Gaskins* and *Pettijohn* failed to inquire into the original meaning of article I, section 8; the common law origins of the article I, section 8; the earliest statutes and precedents illuminating the original meaning of article I, section 8; or the 150 years of statutory authority and case law repeatedly affirming a peace officer's authority to conduct a search incident to arrest.

Based on the original meaning of article I, section 8, I concur in the majority's decision to overrule *Pettijohn.* To the extent the majority concludes that considerations of expediency, public policy, and maximum enforcement of the law are reasons for creating judicial exceptions to the constitutional prohibition against unreasonable seizures and searches, I

respectfully disagree. *See Wright,* ___ N.W.2d at ___ ("The 'mere fact that law enforcement may be made more efficient can never by itself justify disregard of the [constitution].' " (alteration in original) (quoting *Mincey v. Arizona,* 437 U.S. 385, 393, 98 S. Ct. 2408, 2414 (1978))).

## II.

Even if Kilby had a constitutional right to refuse a chemical breath test for alcohol, the due process clause of the Iowa Constitution does not prohibit the state from introducing evidence of her refusal and arguing the fact finder can infer guilt from the refusal.

As discussed in my special concurrence in *State v. Gibbs,* the Iowa Constitution provides less protection than the Federal Constitution in this area of constitutional law. *See* 941 N.W.2d 888, 906–10 (Iowa 2020) (McDonald, J., concurring specially in the judgment). The Iowa Constitution, unlike the Federal Constitution, does not contain a privilege against self-incrimination. *See id.* at 907–10. Because of this textual difference, the Iowa Constitution does not prohibit adverse comment on or an adverse-inference instruction regarding the defendant's pretrial silence or trial silence. *See id.* The question of whether an adverse inference of guilt can be drawn from the defendant's silence is thus left wholly to the legislature:

> Defendant may choose to introduce no evidence. He may choose to offer only witnesses other than himself. He may choose to testify in his own behalf. The choice, in each event, is that of the defendant. Having made his choice, if he chooses not to testify in his own behalf, the effect of such choice, as an inference or presumption of guilt, does not come within the contemplation of what constitutes due process of law. If the effect of such choice is to be determined by constitutional provision, it must be determined by some provision other than the due process clause. If the constitution contains only the due process clause, as does our constitution, then the effect to be given the failure to testify is a matter for the legislature to determine.

*Id.* at 907 (quoting *State v. Ferguson*, 226 Iowa 361, 372–73, 283 N.W. 917, 923 (1939), *overruled in part by State v. Johnson*, 257 Iowa 1052, 135 N.W.2d 518 (1965)).

By extension, in *State v. Benson*, 230 Iowa 1168, 1171–73, 300 N.W. 275, 277 (1941), this court held the due process clause of the Iowa Constitution did not prohibit the state from using as substantive evidence of guilt the defendant's pretrial refusal to take a blood test. The court reasoned,

> Defendant did not take the stand in his own defense. He could not be compelled to testify. However, the fact that he did not testify was a circumstance to be considered by the jury and was a proper subject for comment by the county attorney. His refusal to testify is analogous to his refusal to submit to a blood test. Were we to concede that, pursuant to our decisions in *State v. Height, Wragg v. Griffin,* and *State v. Weltha,* defendant could not be compelled to submit to a blood test, that does not mean that his refusal to submit to it cannot be shown and considered. He cannot be compelled to testify. Yet his refusal to testify can be considered and commented upon. If he cannot be compelled to submit to a blood test it is because he cannot be compelled to give evidence. But, since his refusal to give evidence by testifying can be considered, why cannot his refusal to give evidence by submitting to a blood test be likewise considered? We think that it can be.

*Id.* at 1171–72, 300 N.W. at 277 (citations omitted). In support of its holding, the *Benson* court relied on the absence of a provision prohibiting self-incrimination in the Iowa Constitution:

> Our constitution contains no express provision prohibiting self-incrimination. The only constitutional provision that would appear to guarantee such protection is the due process clause. The statute is Section 13890 of the Code, 1939, and provides as follows: "Defendants in all criminal proceedings shall be competent witnesses in their own behalf, but cannot be called as witnesses by the state." Defendant was not called as a witness by the state. He was not even called as such in his own behalf. The statutory prohibition was fully recognized. We then have the question remaining, Does the due process clause render the testimony

of the deputy sheriff inadmissible?  We answer, No.  It is proper to show the defendant's conduct, demeanor and statements (not merely self-serving), whether oral or written, his attitude and relations toward the crime, if there was one.  These are circumstances that may be shown.  Their weight is for the jury to determine.

*Id.* (citation omitted).

*Benson* is dispositive of Kilby's claim, and I would adhere to that precedent.  *See id.*

### III.

For these reasons, I concur in the judgment.

Oxley, J., joins this special concurrence.

**APPEL, Justice (dissenting).**

In this case, a person suspected of driving while intoxicated declined to provide consent to a preliminary field test and to a standard Datamaster breath test after she was given the implied-consent advisory at the police station. At her trial on driving while intoxicated, the State offered and the trial court admitted evidence that she refused to consent to the testing. On appeal, the defendant presents a narrow issue. She asserts that because she had a constitutional right to refuse consent, the state cannot comment on her refusal to consent to a test in a trial on operating a motor vehicle while intoxicated.[7]

For the reasons expressed below, I would reverse the trial court and remand for further proceedings. I therefore cannot join the majority opinion and respectfully dissent.

**I. Factual Background and Proceedings.**

**A. Background Facts**. The essential facts are not in dispute. On the evening of July 28, 2018, a group of bikers outside a bar in Des Moines were pursuing Hannah Kilby because they believed that she had been the driver in a hit-and-run incident and that she was trying to leave the scene. Police arrived at 10:59 p.m. and began to investigate. At about 11:25 p.m., police requested that Kilby perform field sobriety tests. Kilby consented to the Horizontal Gaze Nystagmus (HGM) test but declined to participate in the walk-and-turn and one-leg-standing tests. At 11:45 p.m., police

---

[7]This case does not involve the central issue in *State v. Pettijohn*, namely, whether consent could be considered voluntary under all the facts and circumstances of the case. 899 N.W.2d 1, 38 (Iowa 2017). Here, consent was not provided. The issue here is whether, in a criminal proceeding for operating a motor vehicle while intoxicated, the State may introduce evidence of a refusal to consent to a chemical test.

requested Kilby submit to a preliminary breath test. After she declined, police arrested Kilby for operating a motor vehicle while intoxicated.

Kilby was transported to the Des Moines police station. Police read to her the standard implied-consent advisory. At 12:05 a.m., police requested a chemical specimen of Kilby's breath for alcohol testing. At 12:32 a.m., police requested a decision on whether to submit to the breath test and Kilby declined to consent. The state subsequently charged her with operating while intoxicated, second offense. Iowa Code § 321J.2 (2018).

**B. Pretrial Proceedings.** Prior to a bench trial, Kilby filed a motion in limine raising a number of evidentiary issues. Of relevance to this appeal, Kilby sought to exclude evidence of her refusal to submit to chemical testing as substantive evidence of her guilt. Kilby maintained that she had a right to refuse to consent and that offering evidence of her refusal violated her due process rights under both the Fourteenth Amendment of the United States Constitution and article I, section 9 of the Iowa Constitution. She argued that there was no exception to the warrant requirement in the case. But, in any event, Kilby asserted that evidence of a refusal to consent is inadmissible regardless of the legality of the search. She further argued that any reference to her refusal to consent to the test would be improper for the court to admit because it would shift the burden of proof from the State to her.

The district court stated that although there was no breath test result, "the breath test result in this case is admissible under the current State of Iowa law." The district court clearly denied the motion in limine with respect to the admission into evidence of Kilby's refusal to submit to chemical testing.

**C. Results of Bench Trial.** Kilby stipulated to trial on the minutes of testimony. Based on the minutes of testimony, Kilby was convicted of operating a motor vehicle while intoxicated. In reaching its verdict, the district court specifically relied upon Kilby's refusals to take the chemical and preliminary breath tests.

**II. Discussion.**

**A. Introduction.** It is well established that the prosecution in a criminal case cannot introduce evidence of the exercise of the Fifth Amendment right against self-incrimination as evidence of guilt. *Griffin v. California*, 380 U.S. 609, 612–15, 85 S. Ct. 1229, 1232–33 (1965). Does the same principle apply when a motorist refuses to consent to a breathalyzer test and the state has not demonstrated a basis for a warrantless search?

**B. Positions of the Parties.**

1. *Kilby.* On appeal, Kilby begins by arguing that she has a fundamental right not to be subject to a warrantless search under article I, section 8 of the Iowa Constitution. Kilby argues that a chemical test is a search, that there was no search warrant in this case, and that the State did not show any exception to the warrant requirement. *See Skinner v. Ry. Lab. Execs.' Ass'n*, 489 U.S. 602, 612, 616–17, 109 S. Ct. 1402, 1413 (1989) (determining that a deep lung breath test implicates bodily integrity and is therefore a search); *California v. Ciraolo*, 476 U.S. 207, 211, 106 S. Ct. 1809, 1811–12 (1986) (holding that a search occurs when a government agent intrudes on an area where a person has reasonable expectation of privacy); *State v. Pettijohn*, 899 N.W.2d 1, 28–29 (Iowa 2017) (confirming the right to refuse a warrantless breath test is a constitutional right under Iowa Constitution); *State v. Ryce*, 368 P.3d 342, 369–70 (Kan. 2016) (holding that a driver has the right to refuse chemical testing even

though driving is characterized as "privilege"). She therefore asserts that introduction of evidence by the State of her refusal to consent to a breathalyzer test violated her right to be free from a warrantless search under article I, section 8 of the Iowa Constitution.

In support of her article I, section 8 argument, Kilby marches through the potential bases for a warrantless search. She asserts that she explicitly refused to consent to the breath test. Therefore, she contends the State cannot claim consent to justify the search. She argues that the notion of a search incident to arrest does not apply under *State v. Gaskins*. 866 N.W.2d 1, 14 (Iowa 2015). Finally, she points out that there was no exigent circumstances that might support a warrant. *Birchfield v. North Dakota*, 579 U.S. \_\_\_, \_\_\_, 136 S. Ct. 2160, 2173–74 (2016). Indeed, according to Kilby, police did not consider obtaining a warrant during the investigation and the State did not argue at the motion to suppress hearing that exigent circumstances were present or offer any evidence suggesting that it was impracticable to obtain a warrant. In any event, as a backup argument, Kilby argues that even if there was a basis for a warrantless search, "evidence of a refusal to consent to a search is inadmissible regardless of the legality of the search." *Elson v. State*, 659 P.2d 1195, 1199 (Alaska 1983).

Kilby also asserts a due process violation under the Fourteenth Amendment of the Federal Constitution and article I, section 9 of the Iowa Constitution. She focuses her fire on Iowa Code section 321J.16, which authorizes admission of a person's decision to withhold consent even when the search was illegal and the evidence would not otherwise be admissible in a criminal proceeding. But, according to Kilby, due process prohibits penalizing the exercise of a constitutional right.

In support of her argument, Kilby cites *State v. Thomas*, 766 N.W.2d 263 (Iowa Ct. App. 2009), and *Longshore v. State*, 924 A.2d 1129, 1159 (Md. 2007), to demonstrate that while a refusal to consent to a search may be admissible "for some purpose other than to simply penalize the defendant for exercising a constitutional right," *Thomas*, 766 N.W.2d at 270, the refusal "cannot be used as evidence of [the defendant's] guilt if the constitutional protection against unreasonable search and seizure is to have any meaning." *Longshore*, 924 A.2d at 1159 (holding the refusal to consent to a warrantless search was inadmissible). Kilby suggests her situation is comparable to cases where courts have refused to allow admission of a refusal to talk with law enforcement after invoking their Fifth Amendment privilege. *See United States v. Goodwin*, 457 U.S. 368, 372, 102 S. Ct. 2485, 2488 (1982) ("To punish a person because he has done what the law plainly allows him to do is a due process violation 'of the most basic sort.' " (quoting *Bordenkircher v. Hayes*, 434 U.S. 357, 363, 98 S. Ct. 663, 668 (1978))); *United States v. Prescott*, 581 F.2d 1343, 1351–52 (9th Cir. 1978) (prohibiting government from commenting on defendants silence); *Bargas v. State*, 489 P.2d 130, 132 (Alaska 1971) ("It would make meaningless the constitutional protection against unreasonable searches and seizures if the exercise of that right were allowed to become a badge of guilt."); *State v. Palenkas*, 933 P.2d 1269, 1279 (Ariz. Ct. App. 1996) ("We can see no valid distinction between the privilege against self-incrimination and the right to be free from warrantless searches, when invoked, that would justify a different rule about inadmissibility as evidence of guilt."); *State v. Glover*, 89 A.3d 1077, 1082 (Me. 2014) ("It would seem . . . illogical to extend protections against unreasonable searches and seizures, including the obtaining of a warrant prior to implementing a search, and to also recognize an individual's right

to refuse a warrantless search, yet allow testimony regarding such an assertion of that right at trial in a manner suggesting that it is indicative of one's guilt." (omission in original) (quoting *Commonwealth v. Welch*, 585 A.2d 517, 519 (Pa. Super. Ct. 1991))).

Yet, Kilby recognizes that over forty years ago, the United States Supreme Court held in *South Dakota v. Neville* that states were authorized to force drivers to submit to blood alcohol tests and to use a defendant's refusal in court on the question of guilt. 459 U.S. 553, 559–64, 103 S. Ct. 916, 920–23 (1983). Similarly, this court in *State v. Knous*, characterized the right to refuse to submit to a chemical test as a statutory right. 313 N.W.2d 510, 512 (Iowa 1981).

But, according to Kilby, the law in the area has shifted since *Neville* and *Knous*. In particular, Kilby cites the Iowa cases of *State v. Harris*, 763 N.W.2d 269 (Iowa 2009) (per curiam), and *Pettijohn*, 899 N.W.2d 1, and the United States Supreme Court cases of *Missouri v. McNeely*, 569 U.S. 141, 133 S. Ct. 1552 (2013), and *Birchfield*, 579 U.S. ___, 136 S. Ct. 2160. Under these more current cases, according to Kilby, there is no per se exigency that forgoes the need to obtain a search warrant in the case of chemical testing of drivers suspected of intoxicated driving.

From these cases, Kilby argues that an individual has a constitutional right not to be subjected to an unlawful warrantless search. Where a person exercises a constitutional right not to be searched, Kilby asserts, there can be no penalty for exercise of that right through the admission of a refusal to consent as evidence in a criminal trial. *See Thomas*, 766 N.W.2d at 270 ("[T]he defendant's right not to be penalized for exercising such a privilege is paramount."); *see also United States v. Runyan*, 290 F.3d 223, 249 (5th Cir. 2002) (noting in a child pornography case that "the circuit courts that have directly addressed this question

have unanimously held that a defendant's refusal to consent to a warrantless search may not be presented as evidence of guilt."); *United States v. Moreno*, 233 F.3d 937, 941 (7th Cir. 2000) (stating in drug prosecution case that Fourth Amendment entitled a defendant to withhold consent to search and admitting evidence of that refusal is inconsistent with due process).

2. *The State.* The State emphasizes that in this case, there was, in fact, no search. Instead, the issue is whether the defendant has a right to refuse to submit a breath test. The State then notes that in *Fitzgerald v. People*, the Colorado Supreme Court rejected a Fourth Amendment claim that the state is prohibited from introducing the refusal to consent to a blood test under the authority of *Neville*. 394 P.3d 671, 674–76 (Colo. 2017) (en banc). As in this case, the *Fitzgerald* court emphasized that no search actually occurred. *Id.* at 674. The State notes that the *Fitzgerald* court cited the permissive approach in *Neville* to distinguish the exercise of Fourth Amendment rights from the Fifth Amendment rights exercised in *Griffin v. California. Id.* The *Fitzgerald* court, the State points out, cited a footnote in *Neville* where the United States Supreme Court observed that "[u]nlike the defendant's situation in *Griffin*, a person suspected of drunk driving has no constitutional right to refuse to take a blood-alcohol test. The specific rule of Griffin is thus inapplicable." *Id.* at 674–75 (quoting *Neville*, 459 U.S. at 560 n.10, 103 S. Ct. at 921 n.10).

The State cites cases from other state courts. For example, in *Commonwealth v. Bell*, a Pennsylvania court reversed a trial court determination that introduction of evidence of a refusal to consent to a blood test during a criminal prosecution for intoxicated driving was unconstitutional. 167 A.3d 744, 749 (Pa. Super. Ct. 2017). Relying on *Neville*, the Pennsylvania court on appeal held that the introduction of the

refusal was not a penalty for the exercise of a constitutional right but instead an evidentiary consequence of a refusal to comply with a request for a blood test. *Id.* at 748–49. The State cites similar cases from Vermont and Washington. *See State v. Rajda*, 196 A.3d 1108, 1120 (Vt. 2018); *State v. Baird*, 386 P.3d 239, 247 (Wash. 2016) (en banc).

In the alternative, the State argues that in this case, any alleged error was harmless. The State asserts that the observations at the scene by police officers that she was dull, drowsy, confused, mumbling, and unsteady establish that any error was harmless beyond a reasonable doubt.

**C. Merits.**

1. *Relevant evidence or impermissible penalty?* The central thrust of Kilby's argument is that there was no basis for a warrantless search through chemical testing and that, as a result, the State could not be permitted to comment on her validly exercised constitutional right in a criminal proceeding against her for intoxicated driving. There is, of course, considerable precedent for the proposition that the state may not use evidence of invocation of Fifth Amendment rights in a criminal proceeding as evidence of guilt. In *Griffin*, the United States Supreme Court emphasized that a person should not be penalized for the exercise of constitutional rights. 360 U.S. 609, 614, 85 S. Ct. 1229, 1233 (1965). And, in *State v. Gibbs*, we recognized the need to protect the Fifth Amendment privilege against self-incrimination from dilution through a jury instruction that commented on an individual's failure to report conduct with criminal implications. 941 N.W.2d 888, 897–900 (Iowa 2020).

The question arises whether the same principle should apply in the context of the exercise of constitutionally established rights in the area of

search and seizure. Search and seizure rights are, of course, different than the right against self-incrimination. But, if permitting an adverse inference of guilt from exercise of Fifth Amendment rights eviscerates the scope of the right, why does the same principle not apply to search and seizure rights? Aren't those constitutionally established rights, with their long and deep historical pedigree, of equal importance?

A number of courts have been protective of the right to refuse consent to blood alcohol testing where the ordinary constitutionally required elements of a valid search are not met. For example, in *State v. Wilson*, a Hawai'i appellate court held that a defendant had a state constitutional right to refuse to consent to a warrantless blood and breath tests. 413 P.3d 363, 367–68 (Haw. Ct. App. 2018). A number of other courts, like our decision in *Harris*, have emphasized the need to satisfy ordinary search and seizure requirements to support a request for chemical testing. *See, e.g.*, *State v. Blank*, 90 P.3d 156, 162 (Alaska 2004) (holding a warrantless search under implied-consent statute valid provided there were exigent circumstances); *McDuff v. State*, 763 So.2d 850, 855 (Miss. 2000) (en banc) (holding the Mississippi implied-consent statute invalid to the extent it mandated search and seizure absent probable cause); *Commonwealth v. Kohl*, 615 A.2d 308, 313 (Pa. 1992) (holding implied-consent statute does not provide basis for avoiding probable cause requirements of Fourth Amendment), *disapproved of on other grounds by Commonwealth v. Myers*, 164 A.3d 1162, 1180 (Pa. 2017).

There is a question of whether the request for a breathalyzer test should be treated differently for purposes of search and seizure analysis than a request for a blood draw. That distinction was made by the United States Supreme Court in *Birchfield*. 579 U.S. at ___, ___, 136 S. Ct. at 2178, 2185. But both the request for a breathalyzer test and a blood draw

are searches. *Id.* at \_\_\_, 136 S. Ct. at 2173. As described in earlier caselaw, "[s]ubjecting a person to a breathalyzer test, which generally requires the production of alveolar or 'deep lung' breath for chemical analysis implicates similar concerns about bodily integrity . . . , should also be deemed a search." *Skinner,* 489 U.S. 602, 616–17, 109 S. Ct. at 1413 (citation omitted). While intrusions of the body are sometimes minimized, Justice Scalia hit the mark when, in a case considering the validity of a buccal swab, he declared that "I doubt that the proud men who wrote the charter of our liberties would have been so eager to open their mouths for royal inspection." *Maryland v. King,* 569 U.S. 435, 482, 133 S. Ct. 1958, 1989 (2013) (Scalia, J., dissenting). The same goes for a deep blast from the innards of our lungs. *See* Paul A. Clark, *Do Warrantless Breathalyzer Tests Violate the Fourth Amendment?*, 44 N.M. L. Rev. 89, 93 (2014); Catherine Norton, comment, *Keeping Faith with the Fourth Amendment: Why States Should Require a Warrant for Breathalyzer Tests in the Wake of* Birchfield v. North Dakota, 87 Miss L.J. 237, 242 (2018).

And, in *State v. Gaskins,* we limited the scope of search incident to arrest to evidence preservation, not evidence gathering, under article I, section 8 of the Iowa Constitution. 866 N.W.2d at 14. We rejected the notion in *Harris* and in *Pettijohn* that the search incident to arrest doctrine applies to situations involving the natural dissipation of alcohol. *Harris,* 763 N.W.2d at 274; *Pettijohn,* 899 NM.W.2d at 19. As a result, the doctrine invoked by the Supreme Court in *Birchfield* to support a warrantless breathalyzer test is not available in this case under the Iowa Constitution. Instead, in order to support a warrantless search, the State must show exigent circumstances under the traditional exigent circumstances doctrine. *See McNeely,* 569 U.S. at 153–54, 133 S. Ct. at 1561 ("In those

drunk-driving investigations where police officers can reasonably obtain a warrant before a blood sample can be drawn without significantly undermining the efficacy of the search, the Fourth Amendment mandates that they do so.").

In this case, the State did not even attempt to establish that there were exigent circumstances under all the facts and circumstances to support a warrantless search. There is simply nothing in the State's resistance about exigent circumstances or any explanation for why obtaining a warrant was impractical in this case. Further, there is nothing in the transcript of the hearing where the State asserted the presence of exigent circumstances to support a search in this case. Thus, the issue is fairly presented: May the refusal of an individual to consent to an unlawful, warrantless, breathalyzer search be offered as evidence of guilt in a criminal proceeding? Stated differently, is there a parallel line of analysis between invoking the privilege against self-incrimination verses the right to be free from unlawful searches and seizures?

There is at least one distinction between search and seizure rights and the right against self-incrimination that has been offered in the literature. If commentary about a person's exercise of the right against self-incrimination is offered in a criminal trial as evidence of guilt, the substantive underlying right, the right not to self-incriminate, has been violated. Kenneth J. Melilli, *The Consequences of Refusing Consent to a Search or Seizure: The Unfortunate Constitutionalization of an Evidentiary Issue*, 75 S. Cal. L. Rev. 901, 910–13 (2002). On the other hand, if evidence that a person refused to consent to a search without a warrant is offered as evidence of guilt, the underlying privacy interests are not invaded by the state since the search did not actually occur. *Id.*

Perhaps so.  But the commentary in a criminal proceeding about a lawful exercise of search and seizure rights—Get a Warrant!—should not be subject to a penalty.  That is the point in *Griffin*.  Just as the commentary in *Griffin* described that the penalty for exercising the Fifth Amendment privilege "cuts down on the privilege by making its assertion costly," *Griffin*, 380 U.S. at 614, 85 S. Ct. at 1232–33, Kilby's lawful refusal to consent to an otherwise unlawful search cannot be so penalized.

And, search and seizure rights should not be discounted.  As noted in a United States Supreme Court case argued by former Iowa Supreme Court Justice John F. Dillon:

> No right is held more sacred, or is more carefully guarded by the common law, than the right of every individual to the possession and control of his own person, free from all restraint or interference of others, unless by clear and unquestionable authority of law.

*Union Pac. Ry. v. Botsford*, 141 U.S. 250, 251, 11 S. Ct. 1000, 1001 (1891).  And, in an observation made describing the United States Constitution but even more applicable under the Iowa Constitution, "built into the general structure of the Constitution is a libertarian bias based on checks against constitutionally suspect laws and in favor of the broadest of the various constructions of [our rights]."  Akhil Reed Amar, *Of Sovereignty and Federalism*, 96 Yale L.J. 1425, 1504 (1987).[8]  In particular, search and seizure rights under article I, section 8 of the Iowa Constitution are not to be frittered away through application of a misguided newly discovered doctrine of radical pragmatism where the scope of the constitutional

---

[8]Pragmatic arguments are sometimes advanced to eviscerate constitutional rights. With respect to warrants and drunk driving, however, field studies suggest that "although warrants do impose administrative burdens, their use can reduce breath-test-refusal rates and improve law enforcement's ability to recover BAC evidence." *McNeely*, 569 U.S. at 162, 133 S. Ct. at 1567 (citing Nat'l Highway Traffic Safety Admin., U.S. Dep't of Transp., DOT HS 810 852, *Use of Warrants for Breath Test Refusal: Case Studies* 36–38 (2007).

protections waxes and wanes through judicial maximization of the state's interest in law enforcement and minimization of individual interests in freedom from arbitrary searches and seizures. *See State v. Wright*, ___ N.W.2d ___, ___ (Iowa 2021) (Appel, J., concurring specially); *State v. McGee*, ___ N.W.2d ___, ___ (Iowa 2021) (Appel, J., dissenting).

In short, citizens have a constitutional right to refuse to consent to an unconstitutional warrantless search. *Camara v. Mun. Ct.*, 387 U.S. 523, 540, 87 S. Ct. 1727, 1737 (1967) ("[A]ppellant had a constitutional right to insist that the inspectors obtain a warrant to search . . . ." ); *Pettijohn*, 899 N.W.2d at 29 n.10; *State v. Banks*, 434 P.3d 361, 368 (Or. 2019) ("[I]nvocation of a constitutional right cannot be admitted at trial as evidence of a defendant's guilt."); *Baird*, 386 P.3d at 254 (McCloud, J., dissenting) (outlining the constitutional right to refuse a search). If the search was constitutional, there would be no right to refuse, but if the search is unconstitutional, there "is definitely a right to refuse." *Baird*, 386 P.3d at 253; *see also Banks*, 434 P.3d at 368. Where there is a "right to refuse," the state cannot use invocation of that right in a criminal proceeding to establish the guilt of the accused.

Professor LaFave agrees. "What the cases indicate is that when the defendant's refusal was within the context of a recognized search-warrant required category, then the Fourth Amendment prohibits admission of that refusal into evidence." 4 Wayne R. LaFave, *Search & Seizure* § 8.1(l), at 165 (6th ed. 2020). We apply that principle here.

As a result of the above reasoning, Kilby's refusal to consent to a breathalyzer test should not have come into evidence in her criminal case.

**D. Harmless Error.**

1. *Positions of the parties.* In this case, the State in the alternative argues that error, if any, was harmless. This was a trial on the minutes of

testimony. Among other things, the district court noted that minutes of testimony established that an officer observed that Kilby had "red and waterily [sic] bloodshot eyes, the strong odor of an alcoholic beverage emanating from her breath, and stated that she had two or three drinks before driving." Another officer saw her as being "dull, drowsy, and at time crying" and observed that her "speech was slurred and at times she was confused and mumbling." The other officer characterized the alcohol odor as "moderate." She exhibited four clues on the HGM test and she did not participate in other field sobriety tests.

Kilby responds that the trial court specifically relied upon Kilby's refusal to take the tests. The district court summarized the State's evidence cited above but further declared that it

> takes into consideration the fact that Ms. Kilby refused to submit to a chemical test both as to the PBT and as to the Datamaster after the invocation of implied consent. Based upon all the foregoing, the Court finds that the State has established by evidence beyond a reasonable doubt that Ms. Kilby is guilty of OWI first offense

Thus, Kilby claims it is clear that the district court considered her refusal to consent to tests in arriving at a determination of guilt. She further asserts that in light of the consideration of the evidence by the district court, the error cannot be considered harmless under *State v. Moorehead*, 699 N.W.2d 667, 673 (Iowa 2005).

2. *Discussion.* In order for constitutional error to be harmless, the court must be able to declare it harmless beyond a reasonable doubt. *State v. Simmons*, 714 N.W.2d 264, 275 (Iowa 2006). This is not a case, however, where substantially the same evidence is already in the record. *State v. Sowder*, 394 N.W.2d 368, 372 (Iowa 1986). Further, the district court specifically relied upon the refusal to consent in reaching the guilty

verdict. Under the circumstances, I cannot say that the error in this case was harmless beyond a reasonable doubt.

**III. Conclusion.**

For the above reasons, I would reverse the judgment of the district court. As a result, I respectfully dissent from the majority opinion.